[No. 5583.]
[No. 3261 C. A.]

HILDRETH ET AL v. CITY OF LONGMONT.

*Error to Denver District Court.*

[No. 6201.]

ADAMS v. CITY OF LONGMONT.

*Appeal from Boulder District Court.*

1. **Municipal Corporation—Local Improvement—Assessment** —A special assessment to discharge the cost of a local improvement may lawfully be made upon the properties benefited, according to their area, and without reference to their respective values.   The statutory provisions in this behalf are not unconstitutional.—(99)

Where in any case this method of assessment works an injustice relief may in a proper case be granted, by reducing the assessment, to the amount of the benefit.—(99, 102)

2. **Assessment—Parks and Other Public Property Omitted—** Objection to an assessment for a local improvement, on the

ground of the omission of public properties by the park, must be presented in the first instance to the special forum which the statute has pointed out to determine the question. No appeal can be had to the courts for a relief which by such application in due time to the statutory authority might have been obtained.—(97)

3. **Notice — Improvements Incidentally Necessary —** Where the report of the city engineer included an estimate of the expense of certain subdrains, and the original resolution of the city council referred to these specifications, and the preliminary notice to property owners advised them that the details and specifications of the work could be examined at the office of the city clerk, the statute requiring such notice was complied with. —(89)

The purpose of such preliminary proceedings is to require the city authorities to determine the extent of the improvement, its cost, and to fully acquaint those whose properties are to ·be assessed to meet the expense of constructing it, with such details as will enable them to act intelligently in presenting objections.—(89)

4. ——Such subdrains being merely for the protection of the work during construction, the cost thereof may properly be treated as part of the cost of the work and assessed against the properties within the drainage district. The provisions of the general statute (Mills' Stats., sec. 4403, cl. 10; Rev. Stats., sec. 6525, cl. 10), not applicable or controlling.—(93)

5. ——**Specifications—Map—**The map showing the location of the manholes is to be taken as part of the specifications.—(94)

6. ——**Sewers—Connection With Natural Drainage —** Provision for the discharge of the sewage into a settling basin connected with a natural stream, constantly flowing, is a compliance with the requirement of the statute (Laws 1899, ch. 151, sec. 13; Rev. Stats., sec. 5371). The discretionary action of the municipal authorities as to the matter will not be interfered with except in an extreme case.—(95)

· 7. ——**Benefits—What to Be Assessed as—**Generally speaking, only such benefits are to be assessed as it is reasonably apparent the property will receive, aside from the general benefit to the community; and nothing is to be considered a benefit which does not enhance the value of the property. A lot which is vacant may be increased in value by the construction of a system of sewers, and is not to escape assessment merely because vacant.—(96)

8.    ———Sewer Districts—Extent of—Authority of City Council—The judgment of the city council as to the extent of a sewer district and the properties to be included therein, when acting within the scope of the authority conferred by statute, is conclusive, unless it clearly appears that their action was fraudulent or unreasonable, and whoever assails the action of the city council has the burden of proof.—(95, 96)

9.    ———Objections—In an action to restrain the city authorities from proceeding with the construction of a storm sewer under the provisions of the Act of April 8, 1899 (Laws 1899, ch. 151, p. 383; Rev. Stats., ch. 120, II B. p. 1250), the proceedings of a public meeting, prior to the adoption of the ordinance, are irrelevant. Objections to the proposed improvement must be made in writing, in the manner and time prescribed by the statute. —(88)

And a petition to the council to submit to a vote of the taxpayers the question whether any public work shall be undertaken, is not such an objection as the statute contemplates, and may properly be disregarded.—(88)

10.    ———Notice of Hearing—Those who actually appear before the proper authority to present objections to the improvement cannot complain of any alleged defect in the notice.—(98)

11.    ———Delegation of Authority to Engineer — Subdrains where required to be laid at certain places, but at what places in particular could not be known with certainty, in advance of the excavation for the contemplated sewer, the question depending upon where water would be encountered. The specifications provided that a certain number of subdrain pipes, of specified sizes, were to be laid under a portion of the main sewer, particularly designated, the remainder to be laid under the laterals as required. The contract left to the engineer nothing but to determine where the subdrains should be placed under the laterals. Held this was not an improper delegation to him of the authority of the city council.—(91, 92)

12.    ———Expense Exceeding Contract—Where the city engineer causes work to be done and expense to be incurred not authorized by the ordinance and preliminary proceedings of the council, the whole proceeding will not be thereby invalidated. Only the assessment against private property of the expense so improperly incurred will be enjoined.—(92)

13.    ———Assessment Illegal in Part—That the city authorities have fraudulently included in the assessment unauthorized items and illegal charges, does not vitiate the entire assessment where the improper items can be separated; and the complain-

(6)

ing taxpayer must allege actual payment or tender of his proportion of what was legally assessed.—(107)

14. Injunction—An injunction to restrain a special assessment for the expense of. a local improvement, only a part of which is shown to have been excessive, will not be allowed when· the amount of the excess is shown with reasonable certainty, unless the bill avers payment or tender of the proper amount. —(107-109)

15. Limitation—A property owner whose objections to a proposed public improvement are overruled, has an action to test the validity of the assessment against his properties; but the action is regulated by statute, and the prerequisites of the statute must be complied with. The provisions of sec. 45 of the Act of April 8, 1899 (Laws 1899, ch. 151, p. 392; Rev. Stats., sec. 5403) limiting actions for relief against what is done toward the construction of a public improvement for thirty days after the wrongful act complained of, is within the legislative power.—(104-107)

16. Evidence—Assessor's Roll—The assessment roll is not admissible to prove the value of the properties assessed.—(95)

*Error to Denver District Court*—Hon. JOHN I. MULLINS, Judge.

In No. 5583. Mr. JOHN A. RUSH, and Mr. H. M. MINOR, for plaintiff in error.

Mr. L. P. McGWIRE, and Mr. F. A. WILLIAMS, for defendant in error.

*Appeal from Boulder District Court* — Hon. CHRISTIAN A. BENNETT, Judge.

In No. 6201. Mr. JOHN A. RUSH, and Mr. H. M. MINOR, for appellant.

Mr. F. A. WILLIAMS, and Mr. GRANT E. HALDERMAN, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court: ·

The city of Longmont took steps to construct a district sanitary sewer. After the contract was let, some of the plaintiffs in error in cause No. 5583 com-

menced suit, the purpose of which was to have the proceedings taken by the city authorities to construct the sewer system adjudged null and void; to enjoin the city and contractors from further proceeding with its construction; and from assessing or levying upon the property of plaintiffs any taxes as their proportionate share of the expense of constructing the sewer system; and also to enjoin the issuance of any improvement bonds on account of such construction. In their complaint they based their right to the relief demanded upon the following averments:

That the city consisted of about 110 blocks; that an ordinance, known as No. 104, was first passed, providing for a system of sanitary sewers for the entire territory embraced within the city, to be paid for by general taxation; that later ordinance No. 107 was introduced and passed, whereby a sanitary sewer district, comprising 90 of the 110 blocks, was created; that the latter ordinance provided for an assessment of cost on the area plan, regardless of benefits, and excluded from assessment certain public parks and blocks used for public school purposes, which would be benefited by the construction of the system; that the creation of the sewer district was an evasion of the terms of the act under which the proceedings were had, in that practically the entire city was made a sewer district, thus subjecting the property therein to assessment on the area plan, to meet the expense of construction instead of the expense being paid by general assessment on the property within the limits of the city, which would have been the case had the system been designed to cover all the territory in the city; that the city authorities never fixed any time or place, and did not give notice required by law, for the presentation of written protests or complaints before the passage of the ordinance; that complaints and protests were filed prior to its passage, but the

same were refused consideration, and were never acted upon; that ordinance No. 107 and the contract thereunder made no provision whatever for connecting the sewer system with some district sewer or natural drainage; that although no provision was made by ordinance, the city has attempted to establish a drainage system in connection with the sanitary sewer at an additional cost of fifteen or twenty thousand dollars; and that the construction of the drainage system underneath the sanitary sewer is a detriment and damage to it.

It was further charged that the sum proposed to be assessed against the property of plaintiffs, upon the area plan, will be more than the entire value of their property; that on many of their lots the assessment will be $84.26 per lot, whereas the actual value of such lots does not exceed the sum of $50.00; that the greater proportion of their property consists of vacant lots in the suburban portion of the town, which will receive no benefit from the construction of the sewer system; that included within the sewer district is the business section of the city, where the value of the lots is from three to ten thousand dollars each; that upon such lots the sewer tax will be only about $17.00 per lot; and that there never was any hearing, consideration or determination by the city authorities of the question of benefits and advantages, or any determination of the cost in relation to such benefits, as to the several lots embraced within the sewer district, but that the same was arbitrarily made upon the area plan.

It is further alleged that a contract has been let for the construction of the system at a cost of more than sixty thousand dollars, and that the work thereby contemplated will be performed, and the proportionate cost thereby made an unlawful charge upon

the property of plaintiffs, whereby their title will be clouded.

It is also charged that the proceedings of the city authorities are in violation of the principle of uniformity in taxation, and will result in taxing the property of the plaintiffs for public use without just compensation, and without due process of law, in violation of §§ 15 and 25 of art. II, and § 3 of art. X of the constitution of the state.

For answer the city authorities and others made defendants denied that there was no ordinance, nor provision, nor resolution providing a place and time of meeting where property owners should be heard upon the question of benefits, and denied that the council did not hear the citizens upon these questions, or that the council declined to receive or hear or permit the citizens to present or discuss written protests; alleged that the drainage system was necessary for the preservation and protection of the sewer system in carrying off water which would otherwise find entrance into the main and lateral sewers, by which means sand and other foreign matter would gain admittance, and obstruct the flow of sewage through the pipes; alleges that the subdrains were necessary appurtenances to the sewer system, and embraced in the notice, ordinance and specifications under the term "Necessary Appurtenances"; and also alleged that the subdrains would not increase the cost more than $8,100.00; and denied they would cause the sewer system to become unsafe or useless; denied that the sewer district was created with the view of virtually including the entire city; and denied that the assessments upon the property of plaintiffs to defray their proportionate share of the cost of the system is in excess of the value thereof, or of the benefits accruing thereto by reason of its con-

struction; and admits the making of a contract to construct the system.

The answer then alleges that under and by virtue of the act of the general assembly, approved April 8, 1899, the city authorities passed a resolution declaring a sanitary sewer a sanitary necessity, and avers facts from which it is made to appear that in all respects the authorities complied with the law relative to the creation of a sewer district, and other details which the law prescribes, including an averment that, according to the plans, map and specifications, the system was connected with a tract of land in close proximity to the St. Vrain river, the only natural drainage for the system; that on January 27, 1904, an ordinance was introduced, creating the sewer district contemplated by the resolution of December 23rd preceding; that thereupon the complaints and objections made in writing by property owners were taken up and heard and considered, and decision thereon reserved until the publication of the ordinance; that the ordinance was published for the legal period, and afterwards the complaints and objections were overruled, and the ordinance duly passed.

To this answer replication was filed, denying that the subdrains were necessary for the preservation or protection of the sanitary sewer; alleged that the resolution of intention by the council did not definitely designate the materials to be used in the construction of the sewer; denied that at any meeting of the council full details and specifications were presented or adopted, designating the materials to be used in the construction of the sewer, or showing any connection of the system with any natural drainage or district sewer; alleges that the sewer system as planned will not connect with any district sewer, or natural drainage; admits that the council designated

a specific hour and day as a time for hearing com-
plaints and objections made in writing, but alleges
that the notice given was not such as is required by
statute; admits the passage of the ordinance order-
ing the improvements, but denies that, prior to
such action, all complaints and objections made in
writing were heard and considered, or that any hear-
ing or consideration thereof was had at all; and de-
nies generally that the city authorities have complied
with the law relating to the construction of district
sanitary sewers.

Shortly after the first cause was commenced, a
second action was instituted by some of the same
plaintiffs and others, the object of which was to se-
cure practically the same relief demanded in the first
case. The causes were consolidated for trial. The
findings of fact were in favor of the city, and judg-
ment rendered dismissing the actions.

Thereafter, and after the completion of the
work, a third cause was commenced by some of those
who instituted the first two cases, and others, the
object of which was to obtain substantially the same
relief sought in the other cases. To the complaint in
the last case, a demurrer was filed, which was sus-
tained and the action dismissed. The judgment ren-
dered in the first two cases was taken by plaintiffs to
the court of appeals for review on error. The plain-
tiffs in the last case appealed to this court. The
cases were here consolidated for hearing, and, as
many of the questions presented in it are similar,
they will be disposed of in one opinion. We will
first consider case No. 5583.

As stated, the findings of fact were in favor of
the city, but counsel for plaintiffs contend that the
court erred in excluding and receiving testimony;
that the evidence is not sufficient to sustain the find-
ings made; that in many respects the law was so

violated as to render the proceedings invalid; and that by the proceedings of the city authorities, constitutional provisions and constitutional rights, federal and state, were violated and infringed. We will now consider and determine the several questions urged on behalf of plaintiffs in support of these alleged errors.

During the initial proceedings by the city authorities, and before the adoption of the sewer ordinance, a public meeting was held, which, it is claimed, was called by the city council, and presided over by the mayor, for the purpose of ascertaining public sentiment regarding the construction of the sewer system. It is asserted that after a full discussion of the question, a vote was taken, which was unanimous against the proposition. It is also claimed that prior to this meeting there had been a canvass of the district, which showed that seventy or eighty per cent. of the people were opposed to the construction of the sewer. At the trial plaintiffs offered to show the action of this meeting, and the result of the canvass, which was refused. There was no error in this refusal. The act under which the city authorities were proceeding— Sess. Laws 1899, p. 393, *et seq.*, at p. 396—provides that complaints and objections concerning proposed public improvements shall be made in writing. Statutory provisions respecting the manner in which protests against public improvements shall be made must be substantially followed in order to avail the protestant.

It is next urged that the court erred in admitting incompetent, irrelevant and immaterial evidence upon cross-examination on the part of defendants in relation to subdrains laid in connection with the sewer system. The abstract does not show that any objection was interposed to this testimony, but counsel in their brief assert that it was objected to upon

the ground that nowhere in the resolution of intention or notice to property owners, nor in the ordinances authorizing the improvement, are the subdrains mentioned or described. This objection is manifestly without merit. The report of the city engineer included an estimate of the expense of the subdrains, the length, and the dimensions of the pipe therefor. The original resolution adopted by the city authorities referred to these specifications. The preliminary notice to property owners advised them that the details, specifications and a map of the proposed system were on file in the office of the city clerk, where they could be examined at all reasonable times during business hours. This is what the statute prescribes such notice shall contain. The statute does not specify what the ordinance authorizing the improvements shall contain. We find, however, that the ordinance in question authorizing the construction of the system referred to the details, specifications and map above mentioned, and directed that the system should be constructed as thereby and therein prescribed. The purpose of such proceedings is to require the city authorities to determine the extent of such an improvement, its cost, and to fully acquaint those whose property will be assessed to meet the expense of constructing it, with such details as will enable them to act intelligently in presenting objections. It appears that the law has been complied with in these respects.

It is also urged that the proceedings are void because it appears the city authorities conferred upon the city engineer the power to direct the mode, manner and extent of laying the subdrains; that it was incumbent upon the municipal authorities to adopt full details with respect to this work, and that they had no power to delegate any of their functions to the judgment of the engineer. We are not advised

wherein the pleadings in any manner present this question, but if they did, the evidence does not establish that the municipal authorities delegated any of their functions to the city engineer. In addition to the proceedings already referred to providing for the construction of the subdrains, we find the advertisement for bids specified, under the head "Statement of Work," the number of linear feet of the subdrains, and the dimensions of the pipe which should be used in constructing them. These particulars were in accord with the plans, specifications, the map prepared by the engineer, the preliminary notice to property owners, and the ordinance authorizing the work. The proposals of the contractors, and the contract itself, also provided for the construction of the subdrainage system in accordance with all the preliminary proceedings at a specified price per linear foot. Counsel, however, urge that because it appears from the testimony that the map, details and specifications of the system prepared by the engineer do not show where the subdrains were to be located, and for the reason that according to his testimony they were to be placed as he might direct, there was such a defect in the details and such a delegation of authority to him as could only be exercised by the city council, that the proceedings are void. The subdrains were not a part of the sewer system proper, but were to be constructed for the purpose of protecting the system from injury. The joints of the sewer pipe were to be set in cement, and this could not safely be done if the pipes were in water at the time they were cemented. It was necessary, therefore, to provide some means by which the water encountered in the trenches could be carried off. For this purpose provision was made for placing drains in the bottom of the trenches excavated for the sewer in order that it might be protected from injury dur-

ing construction. It appears from the testimony that where it might be necessary to place subdrains could not be determined with absolute certainty in advance of the excavation for the sewer. It does appear, however, from the specifications that a certain number of feet of subdrain pipe of special sizes were to be laid under a portion of the main sewer particularly designated. The remainder, according to the evidence, was to be laid under the laterals as necessity required. The extent to which water would be encountered in placing the laterals was more or less conjecture, for there was no way of determining it in advance. The most, therefore, the authorities could do in advance with respect to the laterals was to determine the total length of the subdrains and the dimensions of the pipes to be used in their construction under the laterals. This, we find, was done by the plans, specifications, details and map of the system, and the ordinance authorizing its construction. The contract was definite in this respect, so it was not left to the discretion, whim, or caprice of the engineer to determine anything more than where the subdrains under the laterals should be placed. This did not authorize him in any way to cut down the number of linear feet of the subdrains, or select the material of which they should be constructed, or increase or diminish the price for which the contractors agreed to construct them, or in any manner leave it uncertain what they were to bid upon when they lodged their proposal with the municipal authorities. In these circumstances, the rule contended for by counsel for plaintiffs, in cases cited by them, like *Richardson v. Heydenfeldt*, 46 Cal. 68; *Blanchard v. City of Barre*, 60 Atl. 970; *Kansas City v. Askew*, 79 S. W. 483; *Haag v. Ward*, 85 S. W. 391; *Grant v. Barber*, 67 Pac. 127; *Dewitt Co. v. City of Clinton*, 62 N. E. 780; *Boulton v. Gilleran*, 38 Pac. 881; *City*

of *Walton v. Middleton's Heirs*, 41 N. E. 926; *Levy v. City of Chicago*, 113 Ill. 650, and other cases, which hold, in effect, that a city council cannot delegate the authority conferred upon it by law with respect to the mode, manner and extent of a public improvement, that the municipal authorities must determine the items of material, the total expense, and definitely fix the price in the contract for which the work is to be performed, and that details and specifications must be provided in advance, so that the cost may be ascertained and bidders enabled to make intelligent bids, and the opportunity for fraud and favoritism eliminated, have no application. If the city engineer directed more subdrains than provided by the details, specifications, preliminary notice, and other steps taken by the city council, leading up to the letting of the contract, the whole proceeding would not be invalidated because more subdrains were laid under the direction of the engineer than the contract provided for. The most that could be claimed in such circumstances would be, that the extra expense could not be lawfully assessed against the property of the district—*Haag v. Ward, supra.* The amount of such expense, however, cannot be left to mere conjecture, but must be pointed out with reasonable certainty before any relief on this account could be granted. This plaintiffs have failed to do. Besides, it may be, as recently decided by the supreme court of California, although we do not so hold because unnecessary to a decision in this case, that where the nature of a public improvement is such that an accurate predetermination of details in every respect cannot be made, like in the construction of a sewer, such matters as cannot be determined in advance with certainty may be left to the judgment of the engineer in charge under the direction of the

lawfully constituted authorities.—*McCaleb v. Drey-fuss,* 103 Pac. 924.

It is contended on behalf of counsel for plaintiffs that the expense of constructing the subdrains is illegal, for the reason that the general law on the subject of the cost of drains provides that such cost shall be assessed upon the lots thereby benefited in proportion to the frontage upon the street, or alley, wherein the drain is laid. This statute has no application. The subdrains were merely for the purpose of protecting the system during construction, and we know of no reason why the city authorities may not make a provision for the expense of so protecting it. Had a special arrangement to protect the system from injury by water during the construction not been made, it would have been necessary for the contractors to keep the water out of the trenches while the pipes were being laid. This would have been an expense which they would have added to their bid. There is testimony to the effect that it was less expensive to get rid of the water by drains than by pumping. It was within the province of the city authorities to determine in advance the method to be followed in protecting the system from injury by water during the course of construction.

In this connection we also notice the assignment of error based upon the court's ruling in admitting in evidence the specifications as a part of the contract made with the parties who contracted to put in the system. In support of this assignment it is urged that the plans and specifications were incomplete in that they failed to fix the location of the several manholes. The map of the system shows the location of these manholes was fixed. The engineer who had charge of the work so testifies, and his testimony is not disputed.

It is also claimed that the court erred in admit-

ting incompetent, irrelevant and immaterial testimony on cross-examination on the part of the defendants with relation to the manner of disposing of the sewage from the sewer system, and likewise erred in refusing to allow plaintiffs to introduce testimony tending to prove that the sewer system was not connected with a natural drainage of any kind. One of the issues made by the pleadings was whether or not the system was connected with a drainage of this character. The act above referred to, at page 401, appears to require that a sewerage system must be connected with some natural drainage or district sewer. The trial court found that the Longmont system was connected with a natural drainage; and even if the court committed error in receiving the testimony objected to, or refusing that offered, it was clearly without prejudice, for the reason that the testimony establishes beyond all question that the system was connected with a natural drainage. The discharge was into a settling basin located but a few feet from a natural watercourse, known as Spring gulch. The basin was connected with this stream. Spring gulch is a constantly flowing creek, between six and seven feet in width; is a tributary of the St. Vrain river, and from the point of connection between Spring gulch and the settling basin and the point where the former empties into the St. Vrain is but a distance of 187 feet. The city authorities, in determining the natural drainage for a sewerage system must exercise that degree of judgment and discretion that their action in such matters will not be interfered with by the courts except in extreme cases.

Plaintiffs offered in evidence the assessment roll as returned by the assessor, which was refused. This offer, it is urged, was for the purpose of showing a comparison of the value of the lots with the

amount of the taxes which would be imposed thereon for the construction of the sewer system. There was no error in the refusal. The record of the assessment of property for taxes is not admissible in evidence to prove the value of such property.—*Carper v. Risdon*, 19 Col. App. 530; *Commonwealth v. Heffron*, 102 Mass. 155; *Denver & Rio Grande R. R. Co. v. Heckman*, 101 Pac. 976.

Error is also assigned upon the refusal of the court to allow plaintiffs to offer certain testimony concerning the benefits to their lots by the construction of the sewer system. It is sufficient in answer to this objection to say, that the testimony refused was not competent for the purpose for which it was offered.

The city embraces one hundred and ten blocks, ninety of which were included in the sewer district. This, it is asserted, on behalf of counsel for plaintiffs, was an evasion of the law, and for the purpose of charging the property in the district with the expense of the construction of the sewer system, which could not have been done had the entire city been included in the system, as in that instance the cost thereof would have been paid by the city by taxation based upon values. The city authorities were authorized by the law under which they were acting to create a sanitary sewer district. The authority thus vested was discretionary. The judgment of municipal officers, when acting within the general scope of their authority, is conclusive, unless it clearly appears their action was fraudulent or unreasonable.—*City of Denver v. Kennedy*, 33 Colo. 80; *City of Denver v. Campbell, ibid.,* 162.

No testimony is called to our attention from which it is made to appear that the action of the city council in excluding twenty blocks was done in bad faith, or that their action was fraudulent or unrea-

sonable on this account. The burden was upon plaintiffs to prove the facts which would make it appear that the authorities had acted arbitrarily or in bad faith in designating and establishing as a district sewer that which, in fact, was a public sewer, before the court would be justified in interfering with their action in establishing the sewer district in question.

Considerable of the property of plaintiffs consists of vacant lots in the suburbs of the city, and it is claimed that the benefits to their property resulting from the construction of the sewer system are not equal to the amount they are required to pay therefor. This was one of the issues of fact in the case. The testimony on the subject was conflicting, and the issue determined in favor of the defendants. Generally speaking, only such benefits are to be assessed as it is reasonably apparent the property will receive, other than the general benefit to the community, and nothing is to be considered a benefit which does not enhance the value of the property. Vacant lots may have no present use for a sewerage system, but it adds to their value by giving them a sanitary advantage which renders them salable at a price which otherwise they could not command, because of their desirability as compared with lots not having such advantage. In our judgment the evidence is amply sufficient to sustain the finding of the court, to the effect that the special benefits accruing to the property of plaintiffs by reason of the construction of the sewer equal the assessments to be made against it.

It is urged that if the public parks had been included in the assessments made for the construction of the sewer system some three thousand dollars of the assessment would have been made against these parks. The omission of property which should have been

assessed to pay the cost of·a public improvement does not render the assessment or the proceedings void. All that could be claimed in such circumstances would be, that the assessment on property taxed for such improvement should be reduced to the extent it would have been had the omitted property been charged with its proportionate share of the expense.   But parties seeking this relief must apply in the first instance to the special forum which the law has vested with authority to determine such questions, which in the case at bar was the city council.   In the objections and complaints made by plaintiffs no question was raised on the score of the omission of the parks. Not having availed themselves of the opportunity thus afforded to have their proposed assessments reduced, if, under the law and facts they would have been entitled to such a reduction, they cannot appeal to a court of equity for the relief which they might have secured in the special forum the law has provided.—*Spaulding v. City of Denver,* 33 Colo. 172.

The act of 1899 provides, at page 400, that the cost of a district sanitary sewer shall be assessed upon all the real estate in the district in such proportion as the area of each piece of real estate is to the area of the real estate in the district.   It is claimed that this method of assessing the cost of a sewer is unjust, because property in the business section of the town worth many times more than the lots of plaintiffs is not assessed for any greater sum than their property.   Special assessments are not imposed upon the basis of value, but upon the basis of special benefits accruing from their construction, so that the question of value cuts no figure.   In this connection we notice the claim advanced on behalf of plaintiffs, that their lots are assessed for a greater sum than lots in the business section.   We find, from an examination of the record, that this results from the fact

(7)

that the area of their lots is greater than in the business part of the city.

Plaintiffs also complain that no notice was given fixing the time for hearing objections. The act requires a notice to be given by the city clerk of the proposed improvements, their cost, etc., and that all complaints and objections that may be made in writing concerning the proposed improvements by the owner of any real estate to be assessed will be heard and determined by the city council before final action. This notice appears to have been given. Incorporated therein was a statement to the effect that on a specified date, and at a designated hour, the city council would take up for consideration an ordinance ordering the improvements in accordance with the details, specifications, estimates made, and schedule referred to in the notice. If this was not a sufficient notice to the plaintiffs who had theretofore filed objections with respect to the date their protests would be heard, they cannot complain. The record discloses that they did appear, before the ordinance was passed, at the time designated in the notice, and presented their objections. No objection to the notice was made. Having appeared and presented their objections without raising any question as to the sufficiency of the notice requiring them to do so, they cannot complain that the requisite notice was not given.—*Rich v. City of Chicago,* 38 N. E. 255.

It is urged that the objections of plaintiffs were never acted upon, or that they were refused permission to file them. It appears from the evidence that the objections to the plan of the system were heard and overruled. Later there appears to have been presented a petition, asking the council to submit the sewer proposition to a vote of the taxpayers, which was laid on the table. This action was right. Such a petition was in no sense an objection or complaint

which the objectors were entitled to present.   Other so-called objections were presented later, but long after the time fixed by the notice as required by the statute within which complaints and objections shall be filed.   Objections and complaints cannot avail the parties filing them if not filed within the time which the notice requiring them to be filed fixes when such notice complies with the law in this respect.

The final question urged is, that the act is unconstitutional, for the reason that it provides for an assessment for a public improvement according to area, without regard to benefits.   When the legislature directs that the cost of any improvement be assessed to the abutting property by some designated rule, it will be presumed that the cost so assessed will not exceed the benefits unless the contrary affirmatively appears. —*City of Pueblo v. Robinson*, 12 Colo. 593.   Building lots abutting a sanitary sewer system are *prima facie* presumed to be benefited as the result of its construction.   The rule of apportionment according to area is, therefore, *prima facie* valid, but where any general method employed, though, *prima facie*, legal, would work an injustice, relief in proper circumstances may be granted.—*City of Denver v. Dumars*, 33 Colo. 94.

The law, then, is not unconstitutional because a general method has been prescribed by which to apportion upon the property of a district the expense of constructing a sanitary sewer.   Parties whose property is thus assessed may still question the benefits accruing as the result of its construction.

The purpose of the action to be reviewed in case No. 6201 was to annul the assessments, and with two exceptions, raised practically the same questions we have just considered and determined.   Summarized, it is, in effect, except in two particulars, a reiteration of the allegations contained in the complaints filed in

the first two cases in the court below. The additional allegations are substantially as follows:

By paragraph eleven it is alleged, in substance, that on February 28, 1905, the council passed an ordinance by which the sum of $87,967.57 was assessed against all the real estate in the district at a specified rate per square foot; that prior to its passage, and within thirty days after the publication of notice of the proposed assessment, there was filed in the office of the city clerk, by plaintiffs and other property owners in the city, written complaints and objections against the passage of the assessing ordinance, in which it was set forth that the law under which the proceedings were had and the ordinance ordering the improvements, were without authority and were unconstitutional; that the sewer system was not a district sanitary sewer but a general sewer; that the system had no connection with any other sewer system and no outlet or connection with any natural stream or drainage; that the amount proposed to be assessed against the lots owned by the protestants was greatly in excess of the benefits; that the assessment was not made on the basis of benefits; that they were not uniform; that the sewer was constructed against the objections and protests of the inhabitants of the district and especially of the complainants; that the aggregate amount proposed to be assessed against the real estate in the district was largely in excess of the cost of the sewer system, under the contract made between the city and the contractors; and that the amount included assessments for sand, gravel, subdrains, and other miscellaneous charges outside the contract largely in excess of the actual cost of the same; that the sewer system was not constructed according to the plans and specifications, or in the manner and with the kind of materials provided in the contract; that the system as so con-

structed, instead of being a benefit, was a detriment to the property owners as well as to the lives and health of them and their families, and that the council, without granting the protestants a hearing on their objections and complaints, arbitrarily overruled them and passed the ordinance, with the result that there was apportioned upon, and assessed against the property of plaintiffs, their proportionate share of the entire assessment according to the area plan.

Plaintiffs then state, with particularity as to amount and details, items which they allege were unlawfully and fraudulently included by the city authorities in making up the aggregate amount assessed against the property of the district for the expense of constructing the sewer, which, they say, approximated the sum of thirty-one thousand dollars. They then allege that on July 11, 1905, the newly elected city council appointed an investigating committee, to investigate and make report upon the matters relating to overcharges, fraudulent items, and increase in the cost of the system, set out in their complaint; and allege that until such report was made, which was January 11, 1906, they had no knowledge of the alleged wrongful and fraudulent acts and conduct of the city authorities with respect to the overcharges and items disclosed by the report; and further allege that they are unable to determine what, if any, amount should be tendered or paid by them as a lawful charge against their property, and for that reason are unable to make tender of any amount that might be due and payable thereon in case any lawful assessment is charged against their property, and aver that in case it should be determined that any assessment against their property is lawful, they stand ready to pay such amount as may be so found due and payable.

This complaint was filed April 26, 1906. The demurrer thereto was based upon the grounds that it did not state a cause of action; that it appeared upon its face the plaintiffs had failed within thirty days after the publication of the assessing ordinance complained of, to commence an action attacking the assessment, and that it does not appear from the averments of the complaint that plaintiffs or either of them tendered any sum or amount in payment of that portion of the assessment which was legally chargeable against their respective premises. As previously stated, this demurrer was sustained, and the action dismissed.

Counsel for plaintiffs contend the demurrer should not have been sustained because the law is unconstitutional, that the proceedings are void for the reason it appears from the complaint that steps prescribed by the statute under which the city authorities acted were not taken, that no authority existed to order the construction of a sewer without an outlet, that it was in violation of the constitution and of the statutes to create a sanitary sewer district which embraced practically all the city, and that charges amounting to thirty thousand dollars and upwards allowed by the city authorities were unjust and illegal because they embraced items which could not properly be included in such assessment.

The unconstitutionality of the law is again urged upon the ground that it prescribes an arbitrary rule by which to assess the property in a district for the expense of constructing a sanitary sewer. We have held that such a law is not invalid, but that where it appears the assessments made by the method prescribed amount to more than the benefits conferred by the construction of the improvement, relief may be granted; that is to say, the assessment in such circumstances on a proper showing may be reduced

to a sum equal to the benefits, and it is not necessary to re-discuss this question.

The rule is, that in constructing local public improvements and levying special assessments against the property therefor, the statute must be substantially followed; but the legislature has the power to prescribe the time within which actions to annul assessments made against property for the cost of public improvements shall be commenced.—*City of Denver v. Campbell,* 33 Colo. 162; *Jackson v. City of Denver,* 41 Colo. 362.

Sec. 45 of the act of 1899 provides: "All actions, legal or equitable, for relief against any proceedings had under this law, whether based upon irregularities or jurisdictional defects, shall be commenced within thirty days after the wrongful act complained of, or else be thereafter perpetually barred." The assessing ordinance was passed on February 28, 1905, as appears from the allegations of the complaint, and the suit was not commenced until April 26, 1906, or almost thirteen months after the time when, according to the provisions of the section above quoted, plaintiffs should have instituted the action which they now seek to maintain. Under our decisions to which we have referred, the statute constitutes a bar to the maintenance of their action. Cases from other jurisdictions upholding similar statutes are: *Kansas City v. Gibson,* 72 Pac. 222; *Holmquist v. Anderson,* 74 Pac. 227; *City of Leavenworth v. Jones,* 77 Pac. 273; *U. P. Ry. Co. v. Kansas City,* 85 Pac. 603; *Loomis v. City of Little Falls,* 68 N. E. 105; *Blackwell v. Village of Coeur d'Alene,* 90 Pac. 353.

See, also, *State v. Smith,* 75 S. W. 625, in which it was held that a provision in a city charter requiring the owner of any land charged with the payment of a special assessment for a public improvement to

file with the board of public works within sixty days from the date of the issuance of a tax bill therefor a written statement of all objections to the validity of such tax bill for the doing of the work, etc., and that in any suit on such tax bill, no objection should be pleaded other than those set out in the objections filed with the board, was valid; and that unless such objections were filed with the board within the time prescribed suit attacking the validity of the assessments could not be maintained.

Reasonable limitations regarding the time within which actions can be commenced attacking the validity of special assessments for public improvements are necessary. To meet the expenses of such improvements bonds must be negotiated, and unless there is some reasonable limit within which actions may be commenced to attack assessments levied for the purpose of liquidating such bonds when they mature, they could not be disposed of advantageously, because parties purchasing would never know when an action might be commenced by some dissatisfied taxpayer; and on the other hand, after the lapse of the statutory period they would have the right to presume no such actions could be maintained, and their rights ought to be protected by a statute which fixes a time within which suits must be commenced, unless it is apparent that thereby some constitutional right of the taxpayer has been denied or invaded.

The case at bar presents a striking example of the wisdom of sec. 45. According to the averments of the complaint, the plaintiffs at all times had notice of the steps being taken by the city authorities, of their refusal to consider their protests and objections against the levy of any assessment upon their property, the action of the city authorities in levying such assessments; and of all other acts of which they complain except those we shall notice later; and yet, with

actual knowledge of all these facts, they refrained for nearly thirteen months after the time expired within which, according to the provisions of the statute, they might bring an action to test the validity of the assessment against their property, from commencing any suit, although they claim in the one which they now seek to maintain, that the city authorities failed to comply with the law with respect to the creation of a sanitary sewer district, violated the law in not providing in advance such details and specifications for the construction of the sewer as would enable the cost thereof to be ascertained in advance; practically transgressed the law in every respect; and that their property was virtually confiscated because the amount of the assessments was greatly in excess of the benefits. Certainly, such delay in these circumstances, independent of the statute fixing the period within which actions of the character instituted by plaintiffs must be commenced, does not commend their suit to the favor of a court of equity.—*City of Denver v. Iliff,* 38 Colo. 357.

It is urged that the section of the statute prescribing the time within which actions may be commenced by taxpayers is unconstitutional, because only thirty days is allowed for that purpose. Clearly, plaintiffs are not in a position to urge that question. They had notice at all times of the proceedings, appeared and filed protests in the preliminary stages, knew that they were overruled, and before the assessing ordinance was passed again filed their objections, which were also overruled, and of which they had knowledge, so that they cannot successfully complain that the period prescribed by the statute did not give them time and opportunity to institute proceedings to modify or annul the assessments against their property.—*Blackwell v. Village of Coeur d'Alene, supra.*

It is also urged that the limitation section does not apply because, according to the averments of the complaint, the city authorities had no jurisdiction to levy the assessment of which plaintiffs complain. The section prescribes that suits based upon jurisdictional defects shall be commenced within thirty days after the wrongful act complained of, ''or else be thereafter perpetually barred.'' The want of jurisdiction of the city authorities of which plaintiffs complain is that steps prescribed by the act under which they proceeded were not observed. In short, the want of jurisdiction which they urge is based upon averments with respect to matters which the city authorities did or did not do, as set out in paragraph eleven of their complaint. The limitation section did not prevent them from presenting such questions at the proper time to the city authorities. On the contrary, the act expressly provides for a hearing and determination of objections and complaints by the city council which the property owners may file within the time prescribed before the assessing ordinance is passed—§§ 21 and 22. According to the allegations of their complaint, the plaintiffs did file objections and complaints with the proper authorities covering the very matters they rely upon, as set out in paragraph eleven, to annul the assessments upon their property. These objections were overruled, and the assessing ordinance passed. From their own statements, then, their right to bring an action to test the validity of the assessment against their property based upon the objections and complaints presented to the city council, was preserved. —City of Pueblo v. Colo. Realty Co., 99 Pac. 318. But the right to bring such an action is regulated by statute with respect to the time when it must be instituted; so that, in order to avail themselves of its provisions, they must comply with its prerequisites.

—1.Abbott's Municipal Corporations 925. Not having instituted their action within the time prescribed they are now precluded from attacking the assessments upon grounds embraced in the objections and complaints filed with the council, and to this extent the assessments must, therefore, be regarded as valid.

Counsel for plaintiffs contend that the section limiting the time within which an action must be commenced does not apply, for the reason it appears from the averments of the complaint that a part of the taxes which they now seek to annul is fraudulent, and that the frauds perpetrated in the construction of the sewer were only unearthed by an investigating committee of the council a short time prior to the bringing of this action. The alleged frauds did not excuse the plaintiffs from beginning their action to annul the assessments against their property based upon the other allegations of the complaint. Besides, the averments with respect to the alleged frauds and the time they were discovered cannot avail plaintiffs, for a reason which will appear in discussing and determining the final ground of demurrer, which challenges the right of plaintiffs to maintain their action in the absence of a tender of the taxes which it appears are legal, or which they cannot question. Where the alleged illegal part of an assessment is susceptible of reasonable ascertainment, the property owner will not be permitted to maintain an action to annul the alleged illegal part unless he first pays or tenders so much of the tax which is valid, or cannot be questioned, as is due and payable.—*Hallett v. U. S. Security & Bond Co.*, 40 Colo. 281; *City of Denver v. Kennedy, supra.*

The proper authorities cannot be prevented from collecting taxes regarding which there is or can be no contest by lumping them with those which are contested; and in such circumstances it is not sufficient

for the party challenging part of a tax as illegal to say that he is ready and willing to pay whatever may be found due.—*City and County of Denver v. Hallett,* 100 Pac. 408.

In *State Railroad Tax Cases,* 92 U. S. 575, which were actions brought to restrain the collection of taxes, for the reason that they were excessive, Mr. Justice Miller, in the course of the opinion, at page 616, said:

"But there is another principle of equitable jurisprudence which forbids in these cases the interference by a court of chancery in favor of complainants. It is that universal rule which requires that he who seeks equity at the hands of the court must first do equity * * *. Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them. It is a profitable thing for corporations or individuals whose taxes are very large to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when in the end it is found that but a small part of the taxes should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction. It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The state is not to be thus tied up as to that of which there is no contest by lumping it with that which is really contested."

The paragraph of the syllabus to this case touch-

ing this question, says: "No injunction, preliminary or final, can be granted to stay collection of taxes until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavits, have been paid or tendered without demanding a receipt in full."

A further authority on this subject is *People's National Bank v. Marye,* 191 U. S. 272.

Counsel for plaintiffs urge that they are excused from pleading any tender for two reasons: (1) That the frauds alleged invalidate the entire assessment; and (2) that they cannot ascertain what part of the taxes assessed against their property they may be required to pay. The alleged illegal acts of the city authorities in including items in the assessment which they had no authority to include did not render the entire assessment void, when it appears that the alleged illegal charges can be segregated from those that are legal, or which the plaintiffs, by reason of their failure to commence an action within the statutory period, are now precluded from contesting.— *City and County of Denver v. Hallett, supra.* The alleged illegal items are set forth with great particularity as to amounts and details by the plaintiffs in their complaint, and hence they could have ascertained with reasonable certainty what part they claimed to be fraudulent. In other words, according to the averments of their complaint, the total amount of the alleged illegal items charged in the assessment of which they say they had no knowledge until a short time before their action was commenced, can be ascertained with reasonable certainty. It follows, therefore, under our previous decisions, that in order to state a cause of action to test the validity of the items which they say are illegal and fraudulent, they must allege a payment or tender to the proper authorities of so much of the taxes assessed against them, due

and payable, as they are now precluded from contesting. We do not determine, however, that the illegal charges which they say were unearthed by the investigation of a committee appointed by the council are, in law, fraudulent, or not properly chargeable in the assessment made by the council, but merely hold that plaintiffs, in order to state a case entitling them to have this matter considered, must allege a tender or payment of such part of the taxes due and payable, as disclosed by their complaint, as they are now foreclosed from questioning.

The judgment of the district court in each case is affirmed.        *Affirmed:*

Decision *en banc.*