No. 10,477.

MILHEIM, ET AL. v. MOFFAT TUNNEL IMPROVEMENT DISTRICT, ET AL.

Decided November 22, 1922.   Rehearing denied December 18, 1922.

Action to restrain the Moffat Tunnel Commission from carrying out the provisions of chapter 2, S. L. 1922, authorizing the Moffat Tunnel Improvement District. Judgment for defendants.

*Affirmed.*

1.   CONSTITUTIONAL LAW—*Duty of Courts.* Courts, when called upon to determine the validity of a legislative act, will not declare it void unless in their judgment its invalidity is established beyond a reasonable doubt.

2.   *Municipal Corporations—Improvements—Public Use.* A municipal improvement will be considered for public use where it is open to use by all persons who have need of it. The use may be public though not many persons may enjoy it. The fact that persons using the improvement must pay for the privilege does not render it any the less a public use, providing all can use it on substantially the same terms.

3.   *Tunnel Improvement District—Tax Levy.* There is no constitutional provision that the consent of the people residing in a

municipal improvement district must be obtained before a tax can be levied on the property therein.

4. MUNICIPAL CORPORATIONS—*Moffat Tunnel District.* The contention that the Moffat Tunnel Improvement District, authorized by section 2, S. L. 1922, is not a municipal corporation, overruled.

5. WORDS AND PHRASES—*Municipal Corporation.* A municipal corporation is an institution to regulate and administer the internal concerns of the inhabitants of a defined locality, in matters peculiar to the place incorporated.

6. MUNICIPAL CORPORATIONS—*Corporate Authorities.* Under the provisions of section 12, article XIV, of the Colorado Constitution, the term "corporate authorities" includes appointees to municipal offices.

7. CONSTITUTIONAL LAW—*Taxation—Uniformity Clause.* The Moffat tunnel act of 1922, limiting the tax assessment to real estate, is not invalid on the ground that it contravenes section 3, article X of the Constitution, providing for uniform taxation.

8. *State Credit to Private Corporations.* The contention that the Moffat tunnel act of 1922 is unconstitutional as violating the provisions of section 1, article XI of the Constitution, concerning the pledging of state credit to a corporation, overruled.

9. MUNICIPAL CORPORATIONS—*Improvements—Benefits.* The question of benefits to property resulting from corporate improvements is one of fact, the determination of which by the trial court will not be disturbed on review.
The law does not require that such benefits be exactly equal.

10. *Improvements—Benefits.* A declaration by the legislature that an improvement will be of special benefit to all the property holders within a district, while not conclusive on the courts, will be regarded as highly persuasive, and be rejected only in case it is palpably false.

11. *Moffat Tunnel District—Election of Board Members.* The contention that section 4, of the Moffat tunnel act of 1922, violates section 25, article V of the Constitution, prohibiting the general assembly from passing local election laws, overruled.

12. CONSTITUTIONAL LAW—*Limit of Taxation in Improvement District.* In the enactment of a statute creating a tunnel district, there is no constitutional requirement that the act limit the extent of taxation in the district.

13.    *Improvement District—Bonded Indebtedness—Vote of Electors.* Section 8, article XI of the Colorado Constitution regarding bonded indebtedness, applies only to towns and cities and has no application to the Moffat Tunnel Improvement District, authorized by chapter 2, S. L. 1922.

14.    *Improvement District—Parts of Cities and Counties—Assessment.* The legislature has power to form a tunnel district involving parts of counties and cities, and to give it the right of local assessment.

15.    TAXES AND TAXATION—*Constitutional Law—General Assembly.* The act creating the Moffat Tunnel Improvement District, S. L. 1922, is not in violation of section 7, article X, regarding the imposition of taxes by the general assembly, in as much as the assessment is to be made by officers of the district and not directly by the legislature.

16.    CONSTITUTIONAL LAW—*Moffat Tunnel District—Charter—Special Privilege.* The Moffat Tunnel act, S. L. 1922, does not violate section 2, article XV of the Constitution, regarding corporate charters, as the district is under legislative control. Neither is it in violation of section 25, article V, concerning the granting to a corporation of any special or exclusive privilege.

17.    *Moffat Tunnel—Highway.* The tunnel authorized by chapter 2, S. L. 1922, is not a highway, as that term is used in section 25, article V, of the Constitution.

18.    *Moffat Tunnel—Special Commission.* The Moffat tunnel commission, authorized by chapter 2, S. L. 1922, is not a special commission within the meaning of the prohibition contained in section 35, article V, of the Constitution.

19.    MOFFAT TUNNEL—*Commissioners—Qualifications.* There is no requirement that the qualifications of the members of the Moffat tunnel commission, authorized by chapter 2, S. L. 1922, be prescribed. That a tax-payer may act in such a case, is well established.

20.    CONSTITUTIONAL LAW—*Due Process.* An act creating a tunnel improvement district and authorizing the assessment of the property therein is not in violation of the due process clause of the Constitution, where provision is made for notice, objections by tax-payers and hearings thereon.

    The only constitutional right a property owner in such a district has in the making of the proposed improvement, is to a hearing upon the amount of taxes he should pay.

21.   *Unconstitutional Laws—Burden of Establishing Unconstitutionality.* The power of the legislature being plenary, those who assert the unconstitutionality of an act have the burden of pointing out the inhibitions which apply to the law attacked.

*On Rehearing.*

22.   MOFFAT TUNNEL IMPROVEMENT DISTRICT—*Assessment.* The contention that the assessment made by the Moffat tunnel commissioners, under the provisions of chapter 2, S. L. 1922, constitutes a taking of property without due process of law, overruled.

*Error to the District Court of Jefferson County, Hon. Samuel W. Johnson, Judge.*

Mr. EDWIN H. PARK, Mr. JOHN R. SMITH, Mr. BARNWELL S. STUART, for plaintiffs in error.

Mr. NORTON MONTGOMERY, Mr. ERSKINE MYER, for defendants in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

PLAINTIFFS in error, Milheim and Metcalf, were plaintiffs in a suit to enjoin the defendants in error from proceeding under the recently enacted statute creating The Moffat Tunnel Improvement District, (S. L. 1922) the ground of action being that the said statute is unconstitutional, and that, if enforced, it will burden plaintiffs' property by an illegal tax.

The other plaintiffs in error are taxpayers who were permitted to intervene as plaintiffs. Answers were filed which presented issues of law as to the alleged violations of the constitution, and of fact as to the benefits to the property subject to assessment. The district court of Jefferson county heard evidence upon the question of benefits, and found for the defendants. It held also that the act did not violate the constitution, and entered judgment accordingly. The cause is now before us on error.

The act recites that it will be in the interests of the people of the state generally, and of especial benefit to property within the proposed district, to provide, by means of

a transportation tunnel through the Continental Divide, for communication between the western portion of the state and the eastern portion. It creates an improvement district for the construction of said tunnel, including therein the City of Denver, and the counties of Grand, Moffat and Routt, and certain portions of the counties of Eagle, Gilpin, Boulder, Adams and Jefferson. It provides that, within sixty days from the going into effect of the act, written remonstrances against the making of the improvement may be filed with the board created by the act, and that if remonstrances be filed representing in value at least fifty per cent of the real estate in the district, the proposed improvement shall not be made.

It provides for a board of five members, the first board to be appointed by the governor, to hold office until August 31, 1923, the members thereafter to be elected. It is made the duty of the board to construct or contract for the construction, operation and maintenance of said tunnel, its approaches, and all necessary works incidental thereto. The board is authorized to contract with persons or corporations, for the use of the tunnel, upon such rental as the board may fix; said rental in each case to be a fair and just proportion of the amount required to pay interest on the cost of the tunnel, and create a sinking fund to retire the bonds authorized by the act to be issued. The board is prohibited from permitting a monopoly in the use of the tunnel and is required to allow it to be used by all parties applying, up to its capacity, for use.

The act further provides for the use of the tunnel for the transportation of automobiles, transmission of electric power, and the conveyance of water.

It gives the board authority to levy assessments as needed; provides for the appraising of the benefits, for notice to the parties whose property is assessed, and for a hearing on said assessments.

It is claimed that the act is unconstitutional in numerous particulars, and the questions thus raised have been argued by all the parties fully and ably.

In the consideration of this cause, we have been mindful of the court's duty in the premises as stated by the eminent Justice Shaw, in *Wellington, et al. Petitioners, etc.*, 16 Pick. (Mass.) 87, 26 Am. Dec. 631, where he said:

"When called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt."

It is contended first, that the improvement is not for a public use.

Counsel for the plaintiffs in error appear to concede, by a quotation to that effect, that a use may be public though not many persons enjoy it. This is well established, the requirement being that the improvement be open to use by all persons who have need of it. *Talbot v. Hudson*, 16 Gray, (Mass.) 417.

In *Tanner v. Treasury T. M. & R. Co.*, 35 Colo. 593, 83 Pac. 464, 4 L. R. A. (N. S.) 106, this court said that if the business for which the improvement was made is wholly for private benefit, then the use would be private; "on the other hand, if the business proposed to be carried on * * * is essentially for public benefit and advantage, then the use would be public."

The court then, after adverting to the fact that there is no strict definition of a public use, said:

"Consequently we find, in examining the authorities, that, in determining whether or not a use is public, the physical conditions of the country, the needs of a community, the character of the benefit which a projected improvement may confer upon a locality, and the necessities for such improvement in the development of the resources of a state, are to be taken into consideration."

It was then pointed out that the proposed tunnel would

intersect numerous veins of ore at a great depth, and make possible their working; and that it would drain properties and furnish ventilation to mines, so that the owners of mining properties along and adjacent to the tunnel would secure a distinct benefit therefrom. It was further deemed worthy of notice that the statute recognized that such an improvement might benefit the public generally. The court added that, while the judgment of the Legislature is not conclusive upon the courts, "it is entitled to careful consideration and great weight as the judgment of a co-ordinate branch of the government of the necessities of the state for the development of its resources and the needs of the people in this respect."

The United States Supreme Court has gone much farther than this. In *Spencer v. Merchant*, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, cited with approval in *Branson v. Bush*, 251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215, the court said that a legislative determination that lands assessed were benefited by an improvement was not open to review, and added:

"The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its decision must of course be final."

A later case, *Wagner v. Baltimore*, 239 U. S. 207, 36 Sup. Ct. 66, 60 L. Ed. 230, qualified the above statement to the extent that the legislative determination would not be final if its action was arbitrary and wholly unwarranted.

The above statement of this court that the circumstances surrounding an improvement are to be considered in determining this question is in line with the holding of the Court of Appeals of New York in *Sun Publishing Ass'n. et al. v. Mayor, etc.*, 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788. It was there held that the peculiar situation of the city, and the needs of the public, justified holding that a statute authorizing the construction of a subway by the city, to be leased to a private corporation, was not unconstitutional as providing for the use of public funds for private purposes.

The case is somewhat similar, in one respect, to the case at bar, in that in both cases attempts were made to secure the construction of the improvement by private capital. The court said:

"The commissioners located the road and tried to induce private capital to construct and operate it. In this they have failed, and the situation is such that the city must itself construct the road or go without it. Here we have a demand for a great public highway, which private enterprise and capital will not construct. It is necessary for the welfare of the people and is required by them. It is public in character and is authorized by the legislature."

In *Walker v. City of Cincinnati*, 21 Ohio St. 14, 8 Am. Rep. 24, the court had under consideration a statute under the authority of which the city of Cincinnati proposed to build a railroad from that city to Chattanooga, Tenn. It was there held that the act was not in violation of the constitutional provision which prohibited the general assembly from authorizing cities and towns to loan their credit to a private corporation, that it was for the Legislature to say whether the proposed road was for a public use, and that the act in question was not prohibited by any provision of the state constitution. The court quotes from Cooley on Constitutional Limitations as follows:

"But what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except perhaps where its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful."

We cite the case only upon the points mentioned. In the act under consideration the legislature has declared that there is a public necessity for the tunnel. The fact that persons using the improvement must pay for the privilege does not render it any the less a public use, provided all can use it upon substantially the same terms.

Under the authority of the holding of this court, as above cited, and in line with the decisions in other jurisdictions, we hold that the objection under consideration is not well taken.

It is next objected that the act delegates to a board not recognized by the constitution, the power to levy taxes, and that, too, without the consent of the taxpayers. As to the last part of the objection, it is sufficient to cite from *People ex rel. v. Fleming*, 10 Colo. 553, 16 Pac. 298, where this court quotes with approval from an Illinois case as follows:

"The power to enact laws necessarily includes the right in the lawmaking power to determine and prescribe the conditions upon which the law, in a given case, shall come into operation, or be defeated."

This court then says, that "The legislature may determine absolutely what shall be done, or it may authorize the same thing to be done upon the consent of third parties. It may command, or it may only permit; and in the latter case, as in the former, its acts have the efficacy of law."

We are not cited to any constitutional provision which supports this claim that the consent of the people must be obtained before a tax can be levied.

It is to be noted here, however, that provision is made for objections by taxpayers, and in case the objections represent fifty per cent of the value of the property to be assessed, the improvement can not be made.

The remainder of this objection is that under section 7 of article X of the Constitution, the right to tax can be delegated only to cities, towns or other municipal corporations, and that this district is not a municipal corporation, and so is not within that classification.

According to Judge Dillon the primary idea of a municipal corporation is an institution to regulate and administer the internal concerns of the inhabitants of a defined locality, in matters peculiar to the place incorporated. Dillon on Municipal Corporations, (2d Ed.) p. 93.

In *Wilson v. Board of Trustees*, 133 Ill. 443, 27 N. E. 203, a sanitary district, established by the Legislature, to con-

struct a waterway to carry off the sewage from Chicago and adjacent districts, is held to be a municipal corporation. Counsel for interveners, however, not agreeing on this point with the plaintiffs, class the district among municipal corporations. It is urged, also, that the corporate authorities of such municipalities to whom the right to tax is given, are only such as are elected by the people, or chosen with their˙consent.

On these propositions counsel cite Illinois cases which are directly opposed to the rulings of this court, and to a provision of our Constitution.

In *People v. Earl*, 42 Colo. 238, 94 Pac. 294, we said:

"Municipal corporations are bodies corporate and politic, consisting of the inhabitants of a city, town or district, created by law, partly as the agent of the state to assist in the civil government of the state, but chiefly to administer the local affairs of the city, town or district which is incorporated; they are creatures of statute, endowed with such powers, duties, rights and privileges as are conferred upon them by statute, and none other, except such powers as arise by necessary or reasonable implication, to enable them to execute their functions; the legislature, in the absence of limiting constitutional provisions, has plenary power to adopt, for their government, such measures as shall, in its judgment, best accomplish the purpose for which they are created, including the creation and manner of filling municipal offices, either by election or appointment. (Section 12, Article 14, Constitution.)"

Section 12 of article XIV of the Constitution, thus cited, specifically provides that the general assembly shall provide for the election or *appointment* of municipal officers. See, also, *In re Senate Bill*, 12 Colo. 188, 21 Pac. 481. This is a sufficient answer to the claim that the term "corporate authorities" does not include appointees to municipal offices.

It is next insisted that because the assessment is limited ˙ to real estate, the law violates the uniformity clause of the constitution (Sec. 3, art. X). This objection would apply equally to all special assessments for local improvements,

and does not now require discussion in view of the holdings of this court to the contrary.

Since the decision of *Denver City v. Knowles,* 17 Colo. 204, 30 Pac. 1041, 17 L. R. A. 135, the law in this jurisdiction has been established contrary to the contention of plaintiffs in error.

It is further urged that the act constitutes a lending of aid to private corporations. On this point *Lord v. Denver,* 58 Colo. 1, 143 Pac. 284, L. R. A. 1915B, 306, Ann. Cas. 1916C, 893, is cited. That case is clearly not in point, since the statute in that case provided for the payment by the City of Denver of two-thirds of the cost of constructing a tunnel, and gave the railroad company the right thereafter to purchase the city's interest. The act, therefore, not only, in effect, authorized the lending of credit, but authorized an actual partnership between the city and the railroad, requiring the city to assume two-thirds of the risk of the enterprise, with the right in the other party to buy the city's interest, at cost. The right of the city to lease a tunnel owned by it was not involved or considered.

There is no element of credit to the railroad company in this act. The commission is to construct a tunnel which the district will own and control, and any railroad company using it will pay the rental fixed by the tunnel commission. In the Lord case it was recognized that municipalities may, on their own account, construct tunnels, or other improvement reasonably necessary to public uses, in which the municipality has a special interest. This was the result of the court's distinguishing the cases of *Walker v. City of Cincinnati, supra; Sun Publishing Ass'n v. Mayor, etc., supra;* and *Haeussler v. City of St. Louis,* 205 Mo. 656, 103 S. W. 1034, in each of which the improvement under consideration was owned and controlled by the municipality.

It is further objected that the benefits are unequal. The law does not require that the benefits should be exactly equal.

In *City of Denver v. Kennedy,* 33 Colo. 80, 80 Pac. 122, 467, it is said, speaking of assessments:

"In making such an apportionment, absolute equality is not to be expected. A reasonable approximation thereto is all that can be required. * * * It will be presumed that the city authorities, in making special assessments, did so with reference alone to the special benefits accruing to the property assessed."

The question of benefits is one of fact, (*Hildreth v. City of Longmont,* 47 Colo. 79, 105 Pac. 107), and, upon a full hearing, the trial court determined the issue adversely to the plaintiffs in error.

It is further objected that no special benefits accrue to the property owners in the district in Jefferson county. Bearing in mind the fact that the Legislature has declared that the improvement will be of special benefit to all the property within the district, and applying to that statement the settled doctrine that while such a declaration is not conclusive upon the court, it will be regarded as highly persuasive, and to be rejected only in case it is palpably false, we cannot say that the objection is well taken. In *Denver v. Kennedy, supra,* it is said that it is within the province of the Legislature to determine whether or not the special benefits were equal to the cost of the improvement. In this connection it may be noted, also, that it is a truism that the growth of cities enhances the value of agricultural lands in their vicinity. It cannot be questioned that the tunnel will make possible the delivery of coal in Denver at a considerably lower freight rate, and hence make it probable that the growth and prosperity of the city will be materially promoted. That being true, the lands in Jefferson county within this district will assuredly increase in value with the growth of Denver.

It is said also that section 4 of the act, which provides for the election of members of the board to hold office after August 31, 1923, is in violation of section 25 of article V of the Constitution, which prohibits the General Assembly from passing local or special laws for "the opening or conducting of any election, or designating the place of voting."

This objection is without merit. Whether the inhibition

in question applies to an act which deals only with the opening or conducting of *an* election, and not to one which governs the conducting of elections, need not be determined. This act forms an improvement district and provides for its government. To carry out the purpose as to the government of the district, provision is made for the election of officers. This is merely incidental to the main purpose of the act. The hour of opening the polls, and the period during which they shall be kept open, are specified, as are the qualifications of the electors. All other matters incident to the elections are left to the action of the board of directors.

We are unable to appreciate the force of the objection that neither the rate nor the extent of taxation is limited. No constitutional requirement that the act contain such limitation is named, and we know of none.

It is also contended that the act violates section 8 of article XI, in that it authorizes the creation of a bonded debt without a vote of the qualified electors.

That section, in terms, applies only to cities and towns, and has no possible application to this case.

It is said, also, that the act violates article XX of the Constitution, in that it authorizes a special assessment of property in Denver without the approval of the taxpaying electors. This ignores the fact that the district is an independent entity, not subject to the charter of the City of Denver, though the city forms a part of the district. The same contention was made in *Wilson v. Board of Trustees, supra,* and the authority of the Legislature to form a district, involving parts of counties and cities, and give it the right of local assessment, was upheld.

Counsel for the interveners urge still other grounds for holding the act unconstitutional.

It is said that it violates section 7 of article X in that it is an imposition by the General Assembly of taxes for municipal purposes. There is no ground for this contention, inasmuch as the assessment is to be made by the officers of the district, and not directly by the Legislature. In an

objection already discussed counsel recognize that the assessment is to be made by the "corporate authorities."

It is contended also, that the act violates section 2 of article XV; the 23rd paragraph of section 25 of article V; and section 13 of article XIV, Mills' Ann. Stats. 1912.

Section 2 of article XV provides that "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state."

This district is manifestly under legislative control, and as such is within the exemptions named. The section applies primarily to private corporations. *Carpenter v. People*, 8 Colo. 125, 5 Pac. 828.

In *Johnson v. People*, 6 Colo. App. 163, 40 Pac. 576, it is said that this section clearly grants the power to create municipal corporations by special charters.

The 23rd paragraph of section 25, article V of the Constitution prohibits the Legislature from "granting to any corporation, association, or individual any special or exclusive privilege, immunity or franchise whatever."

There is nothing in this act which can be considered as granting any special or exclusive privilege, within the meaning of this article of the Constitution. The only authority given to the district is that necessary to carry out the purpose of its creation. If, as is settled by the case above cited, the legislature may create municipal corporations by special charters, the power which it gives to those corporations to carry out their purposes cannot be within this inhibition.

Section 13 of article XIV, which concerns the organization and classification of cities and towns, has no application to the question before us.

Since this district is not a county, and is not given any of the characteristics of a county, the discussion of the several articles of the Constitution concerning counties and their authority is not in point.

Another objection made is that the act violates section

25 of article V of the Constitution in that it provides by special act for the laying out of a highway, which is prohibited by said section.

Clearly the tunnel is not such a highway as was in contemplation of the makers of the constitution. The term "highway" in that section is to be construed according to its ordinary meaning, and as equivalent to a public road. *Manigault v. Springs,* 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274.

It is further objected that the act violates the provisions of section 35 article V which provides that, "The general assembly shall not delegate to any special commission, private corporation or association, any power * * * to levy taxes."

This court has held—*In re Senate Bill,* 12 Colo. 188,— that a board of public works for the City of Denver, to be appointed by the governor, was not a special commission within the meaning of this section. The court points out that the board in question was "permanent in its nature, being charged with continuous duties, and vested with certain perpetual powers." The term "special commission" was held to refer "to some body or association of individuals separate and distinct from the city government; that is, created for different purposes, or else created for some individual or limited object not connected with the general administration of municipal affairs."

The tunnel commission is the governing body of the district, and under the view of the court, as above expressed, cannot be regarded in any sense as a special commission.

Another objection made is that the act does not provide for an impartial tribunal "to decide either the legality or the amount of assessment." It is not apparent how commissioners would, in any event, determine the legality of an assessment, though the amount thereof is under the commission's control. The objection appears to be that there is no specification as to the qualifications of the commissioners, and that the commissioners may be taxpayers in the district. There is no requirement that their qualifi-

cations be prescribed. That a taxpayer may act in such a case is well established. *Hibben v. Smith,* 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195. In any event, the objection goes to a provision of the bill which is not claimed to be in itself unconstitutional.

It is objected, also, that the improvement is not local in the sense that justifies special assessments, and that the assessment is arbitrary, unlimited and in excess of benefits. These objections have been answered by the preceding discussion of the matter of benefits.

Finally, we have to consider the familiar objection that the act authorizes the taking of property without due process of law. In fairness to counsel it should be said that this objection is not pressed. The act provides for a detailed notice to the taxpayers of the assessment, and for a notice of time and place for hearing objections thereto, and requires the board to hear evidence and argument on the objections. After that, a taxpayer who is dissatisfied may appeal to the district court and have the question there tried.

Such a statute is not open to the objection that it authorizes the taking of property without due process of law. *Spencer v. Merchant, supra.*

The Legislature having full authority to create the district, and authorize the improvement, "the only constitutional right possessed by the property owner, as to the making of the proposed improvement, is to a hearing upon the question of what is termed, the apportionment of the tax; i. e., the amount of the tax which he is to pay." *Londoner v. Denver,* 52 Colo. 15, 119 Pac. 156.

Counsel have discussed at some length various provisions of the bill, to which they object on grounds which might have been apt if presented to the legislature, but which cannot be considered by this court.

It is elementary that, the power of the legislature being plenary, those who assert the unconstitutionality of an act have the burden of pointing out inhibitions, express or implied, in the Constitution which apply to the law under

discussion.    This burden the plaintiffs in error have not sustained.

The judgment of the district court is therefore affirmed.

MR. JUSTICE ALLEN concurring specially:

I concur in the affirmance of the judgment.    Since many of the questions raised in this case are of far reaching importance, and the writer of the opinion of the court has not expressed all of my views, I feel inclined to review this cause in a specially concurring opinion.

This is a suit for an injunction to restrain the Moffat Tunnel Commission from proceeding to enforce, or attempting to enforce, the provisions of chapter 2 of the Session Laws of 1922, Extraordinary Session, the same being an Act commonly known as the Moffat Tunnel Law, which was approved by the Governor on May 12, 1922.    Several parties intervened, asking the same relief as that prayed for in the complaint of plaintiffs.    In effect, this is a suit to determine the constitutionality of the Moffat Tunnel Law. The trial court held the statute to be constitutional and valid, and accordingly entered judgment for the defendants who consist of the Moffat Tunnel Improvement District, a body corporate, and the individuals who, as a board, constitute the Moffat Tunnel Commission.    The plaintiffs and interveners below bring the cause here for review.

The object and purpose, and, in substance, the nature, of the Moffat Tunnel Act, is indicated by its title, which is as follows:

"An Act to provide for the creation of an improvement district to be called 'The Moffat Tunnel Improvement District,' for the construction of a tunnel through the Continental Divide between Grand County and Gilpin County, said tunnel to be used for transportation and other purposes; to provide for officers of said district, defining their powers, duties and compensation; to provide for the levying and collecting of assessments upon real estate within said district, and for the issuance of bonds for the payment of the cost of construction of such tunnel."

The improvement district is provided for in section 2 of the act, reading, in part, as follows:

"Section 2.    There is hereby created an Improvement District to be known and designated as 'The Moffat Tunnel Improvement District.'    Said District is hereby declared to be a body corporate under the laws of Colorado, and by said name may sue and defend in all actions, suits and proceedings."

The territory comprised in the district is described in the same section, and it is provided that the District shall be comprised of the City and County of Denver, county of Grand, county of Moffat, county of Routt, and certain described portions of Eagle, Gilpin, Boulder, Adams and Jefferson counties.

In section 4 it is provided that "said district shall be managed and controlled by a board of five members to be known as the 'Moffat Tunnel Commission.' "

The improvement contemplated and authorized by the Act is provided for and described in section 6, which reads as follows:

"Section 6.    It shall be the duty of said Board, on behalf of said District, to provide for the construction of and to construct a transportation tunnel, its equipment and approaches thereto; said tunnel to be constructed at an elevation of approximately Nine Thousand Two Hundred (9,200) feet above sea level, the eastern portal of said tunnel to be located at the most practicable site on the eastern slope of the Continental Divide and near the head-waters of South Boulder Creek, the western portal of said Tunnel to be located at the most practicable point on the western slope of the Continental Divide, near the head-waters of the Fraser River.    Said tunnel and its approaches shall be so constructed that the same may be used for standard gauge railroads, for the transmission of power and for the use of telephone and telegraph lines, for the transportation of water and for the transportation of automobiles and other vehicles."

In the absence of any constitutional provision to the con-

trary, a Legislature may create, as it has by the Moffat Tunnel Law, an improvement district. The formation of such districts is a function pertaining purely to the legislative branch of the government. Drainage districts have, accordingly, been created. 19 C. J. 614. No provision of the state or federal Constitutions has been pointed out, and none exists, which prohibits our Legislature from creating such a district as is created and provided for by the statute now under consideration. The constitutional questions presented by the record do not pertain to the right of the Legislature to create any improvement district. They concern certain features and provisions of the Act, apart from this.

In the consideration of the constitutional questions presented to us, we are to proceed in the light of two principles. The first is as indicated in *Alexander v. People,* 7 Colo. 155, 2 Pac. 894, where this court said:

"The legislature being invested with complete power for all the purposes of civil government, and the state constitution being merely a limitation upon that power, we look into it (the statute), not to see if the enactment in question is authorized, but only to see if it is prohibited."

The second rule, above referred to, is stated in *C. B. & Q. R. Co. v. School Dist.,* 63 Colo. 159, 165 Pac. 260, as follows:

"We are required to uphold legislation, unless its unconstitutionality appears beyond all reasonable doubt. (citing cases) An act is to be overthrown only when it is clear and unquestioned that it violates the fundamental law. (citing cases)."

The latter rule has been carefully observed by the courts when passing upon the validity of statutes or ordinances authorizing the construction of public improvements, the special assessments connected therewith, and the creation of improvement districts. See *Cook v. Port of Portland,* 20 Or. 580, 27 Pac. 263, 13 L. R. A. 533 (where the legislature created an improvement district, provided for the enlargement of the channel of Willamette River, and for

the taxation of property in the district to pay for the improvement) ; *Admiral Realty Co. v. New York, infra.* It is, of course, the rule in any case involving the constitutionality of a statute. 8 Cyc. 801.

I.   The first proposition asserted by plaintiffs in error as a ground for holding the act unconstitutional and void is that "this improvement (the tunnel) is not a public use."

This proposition, if established, is material for the reason that the Legislature has no rightful power to impose taxes on the people for any other than a public purpose. 37 Cyc. 719. This limitation upon the taxing power is based upon and derived from the inherent purposes of the state as a social organization. Gray, Limitations of Taxing Power, §§ 169, 170.

The Moffat Tunnel Law provides for the levy and collection of special assessments upon real estate situated within the district. Special assessments are not taxes, as the term is used in some parts of the Constitution, but nevertheless they are imposed in the exercise of the power of taxation. *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041, 17 L. R. A. 135. They can be imposed only for a public purpose. In other words, the improvement which may be paid for by special assessments must be a public improvement. 25 R. C. L. 97, section 12.

The presumption is that the improvement provided for by the Moffat Tunnel Law is for a public purpose. The burden of showing that it is not, is upon the plaintiffs in error, since they seek to overthrow the statute on that ground. *Denver v. Knowles, supra.*

The trial court, after hearing the evidence, held that the proposed improvement is or will be, when constructed, of a public nature. The question of public use is one of law, after the facts bearing thereon are established. There is no reason, from anything appearing in the record, or in the act itself, for holding that the proposed improvement will not be a public use.

The question of public use arose in *Prince v. Crocker,* 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610, and it was

there held that the construction of a subway in Boston was for a public use, and it was a public use notwithstanding the fact that the Transit Commission was empowered to lease the subway, when completed, to a street car company. In *Sun Printing & Pub. Assn. v. Mayor*, 8 App. Div. (N. Y.) 230, 40 N. Y. Supp. 607, the court, with reference to a subway, capable of being used by a street railroad, said: "That it is a public purpose does not seem to admit of question." To the same effect is *Admiral Realty Co. v. City of New York*, 206 N. Y. 110, 99 N. E. 241, Ann. Cas. 1914A, 1054, dealing with the construction and leasing of subways in New York City. A public use is a use which concerns the whole community, as distinguished from a particular individual or a particular number of individuals. 32 Cyc. 1255. In another part of this opinion, is stated the conclusion and the grounds therefor, that neither the act nor anything that may be done under it is an aid to a private person or corporation. From that conclusion it follows that the proposed improvement will be of public benefit and advantage. It will serve the public in a manner similar to that in which the subways served the public, in the cases above cited, and they were held to be a public use. It will serve the public in more ways than did the improvements in those cases, as appears from section 6 of the act, already quoted, which describes the proposed tunnel.

The improvement will be a public use, under the accepted definitions of that term, under the authorities cited, and under the considerations mentioned and the test laid down in *Tanner v. Treasury T. M. & R. Co.*, 35 Colo. 593, 83 Pac. 464, 4 L. R. A. (N. S.) 106.

II. A local improvement, to be chargeable upon private property as such, must possess the element of public use, above discussed, and also "must confer a special benefit on the property sought to be specially charged with its creation and maintenance, over and above that conferred generally upon property within the municipality (or district)." 25 R. C. L. 97, section 12. To the same effect is *Denver v.*

*Kennedy,* 33 Colo. 80, 80 Pac. 122, 467; *Pomroy v. Pueblo,* 55 Colo. 476, 136 Pac. 78.

The plaintiffs in error contend that the proposed improvement lacks the element of special benefit.

That the element of special benefit exists, with reference to the Moffat Tunnel, has been declared by the legislature in the Act in question. Section 1 thereof reads as follows:

"It is hereby declared that to provide for an avenue of communication by means of a transportation tunnel through the Continental Divide at or near James Peak will reduce the barrier which now separates the western portions of this state from commercial intercourse with the eastern portion thereof, will facilitate communication all seasons of the year, will promote the health, comfort, safety, convenience and welfare of the people of the State of Colorado, and will be of especial benefit to the property within the boundaries of the improvement district hereinafter created."

This section is also, in effect, a legislative declaration that the proposed improvement is and will be a public use. If the declaration on that point is not conclusive upon us, it is at least entitled to great weight. *Tanner v. Treasury T. M. & R. Co., supra.* 25 R. C. L. 99, section 14. Irrespective of this, however, we have already disposed of this question in an earlier part of this opinion.

In addition to section 1 of the act, the legislature made a still more positive and clear declaration with reference to special benefits. The first clause of section 11 reads as follows:

"It is hereby expressly declared that the special benefits accruing to the real estate in said District to be assessed are in excess of the cost of the improvements herein provided for and in excess of the assessments herein provided for against said real estate."

There is nothing in the record to show that this legislative declaration was arbitrary or unfounded in reason. The evidence and the record support the truth of the declaration and the good faith of the legislature in making it.

The inclusion of property in an assessment district is prima facie evidence that it will be benefited by the improvement. 28 Cyc. 1129. The usual test of benefit is the increase of value of the land. 28 Cyc. 1129. The record in this case shows testimony to the effect that the value of the land in the Moffat Tunnel Improvement District would be increased because of the increased transportation facilities. In *Denver v. Kennedy, supra,* this court saw no reason for finding that the property in a viaduct district was not specially benefited. In *Larsen v. San Francisco,* 182 Cal. 1, 186 Pac. 757, the court was concerned with a case where there was constructed, or intended to be constructed, a tunnel piercing a high ridge which separates the more densely populated portion of San Francisco from the large and comparatively level region lying west of the ridge. In the course of the opinion the court said:

"We are satisfied that the construction of the tunnel here involved is specially beneficial to the property upon which the assessment is levied, to the extent necessary to justify the assessment."

In *Cook v. Port of Portland, supra,* the improvement district was held to be specially benefited by the enlargement of the channel of a river so as to connect the city of Portland with the Pacific Ocean.

In the case at bar an examination of the facts set forth in the record will show that the particular localities comprising the Moffat Tunnel Improvement District are peculiar in their topography. The area of the district is one which is cut off from intercourse with the rest of the world for many weeks in the year. The boundaries of the district upon the south and the east, with the exception of that small part of the district lying east of the Continental Divide, follow precisely the mountain ranges which form the barrier isolating this part of the state. The lack of easy communication, and for some periods during the year, of any communication at all, with other parts of the state, interrupts and jeopardizes commercial intercourse of all kinds. Products from this vast and fertile territory cannot

be marketed with any degree of assurance. The proposed improvement is one needed, and will benefit the district in a peculiar and local way above any possible benefit to the state at large. The land lying east of the divide will also be specially benefited, and that portion of the district which is covered by the City and County of Denver will be specially benefited in a way similar to that in which the City of Portland was benefited by the creation of the Port of Portland, as explained in *Cook v. Port of Portland, supra.*

The record not showing that the legislative declaration, heretofore quoted, is unreasonable, this court need go no further, in overruling the contention as to special benefits, than to apply the rule laid down in several cases decided by the Supreme Court of the United States, namely, that the legislative declaration is conclusive upon the owners of the lands and upon the courts. *Branson v. Bush,* 251 U. S. 182, 40 Sup. Ct. 113, 64 L. ed. 215; *Spencer v. Merchant,* 125 U. S. 345, 8 Sup. Ct. 921, 31 L. ed. 763; *Houck v. Little River Drainage Dist.,* 239 U. S. 254, 36 Sup. Ct. 58, 60 L. ed. 266.

Since the act creates a special district, and contemplates a particular improvement, we are also bound by the legislative declaration to the effect that the assessments will not exceed the benefits.   25 R. C. L. 139, section 57.

The principle of the foregoing authorities has received approval by this court in *Denver v. Kennedy, supra,* where it was stated, in effect, that if a law designates the city authorities as the body to determine what property was and what was not specially benefited by the construction of a local improvement, the action of such authorities, in such matter, "is conclusive, unless it clearly appears that their action was fraudulent or unreasonable."

Consistent with the authorities above cited, is also the case of *Van Kleeck v. Ramer,* 62 Colo. 4, 156 Pac. 1108, where this court held that a declaration by the Legislature that an enactment is necessary for the immediate preservation of the public peace, health and safety, is conclusive,

and not subject to review by the courts. Among other things, we there said:

"Except as limited by the Federal or State Constitutions, the authority of the General Assembly is plenary.    *    *    *

"During the process of the enactment of a law the legislature is required to pass upon all questions of necessity and expediency connected therewith. The existence of such necessity is a question of fact, which the general assembly in the exercise of its legislative functions must determine; and    *    *    *    that fact cannot be reviewed, called in question, nor be determined by the courts. It is a question of which the legislature alone is the judge, and when it determines the fact to exist, its action is final."

III.    It is provided in section 2 of the Act that there is created an improvement district to be known and designated as "The Moffat Tunnel Improvement District," and it is further provided that the district be a body corporate under the laws of Colorado and may sue and defend in its corporate name. Two preliminary constitutional questions may here be disposed of. *First*. The act does not violate section 2, article XV of the Constitution, prohibiting the creation of corporations by special law. That section applies only to private corporations. *Carpenter v. People*, 8 Colo. 125, 5 Pac. 828. The Moffat Tunnel Improvement District is not a private corporation. *Second*. The Act does not violate section 13, article XIV of the Constitution which forbids, by implication, the creation of cities and towns otherwise than by general law. The improvement district in question is not a city or town, nor even a municipal corporation. It resembles a levee district, in the matter of the nature of the corporate entity. In *People v. Reclamation Dist.*, 117 Cal. 114, 48 Pac. 1016, it was said that such districts are neither private nor municipal corporations, but are special organizations, formed to perform certain work, which the policy of the state requires or permits to be done, and may, therefore, be created by special law, without there being a violation of constitutional provisions such as above referred to. See also 25 Cyc. 194.

IV.   As before stated, the Moffat Tunnel Improvement District is not a city or town.   Therefore the act does not violate section 8 of article XI of the Constitution, which places limitations upon cities and towns in the matter of contracting debts by loans, and provides for the submission of certain questions relating to indebtedness to the qualified electors.   That section applies to cities and towns only.   The case of *Denver v. Hallett*, 34 Colo. 393, 83 Pac. 1066, involved Denver, a city, and is not applicable in the instant case.   Section 6, article XI, is similar to section 8, but applies to counties only, and section 7 applies to school districts.   None of these sections apply to a quasi corporation such as this improvement district.

V.   It is contended that the Moffat Tunnel law violates section 7, article X, of the Constitution.   That section reads as follows:

"The general assembly shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, but may by law vest in the corporate authorities thereof respectively the power to assess and collect taxes for all purposes of such corporation."

There are several answers to this contention, any one of which is sufficient to overrule the objection raised.

First.   The word "taxes" as used in the section above quoted does not comprehend within its meaning special assessments.   *Lainhart v. Catts*, 73 Fla. 735, 75 So. 47. While this precise point was not directly decided in *Denver v. Knowles, supra,* yet the court there said:

"There is certainly reason for saying that the word 'tax,' when used in the constitution, refers to the ordinary public taxes, and not to the assessments for benefits in the nature of local improvements."

The court there applied its reasoning to section 3, of article X, which relates to uniformity of taxation, but the reasons apply as well to section 7.

Second.   Another answer to the contention of plaintiffs in error is that the Legislature is not imposing any taxes, by the act, even if the special assessments provided for are

taxes. The Legislature vests in the Moffat Tunnel Commission the authority to levy the special assessments.

Third. It was stated in *Stermer v. Board,* 5 Colo. App. 379, 38 Pac. 839, that the words, "municipal corporation," as used in this section (sec. 7, art. X), apply only to cities and towns. The district here involved is neither a city nor town.

Fourth. Assuming that the district is a municipal corporation within the meaning of section 7, article X, the Legislature, as permitted by that section, vested in the corporate authorities of such corporation the power to assess and collect the special assessments. The Moffat Tunnel Commission is the corporate authority of the district. It has power to act in all matters relevant to the purposes for which the district was created. It is a "corporate authority" within the meaning of the constitutional provision cited, for the reason that it is vested with authority in regard to the particular matters spoken of in the Constitution. This is in accord with the definition of "corporate authorities" as given in Black's Law Dictionary, 272, as follows:

"The title given in statutes * * * to the aggregate body of officers of a municipal corporation * * * who are vested with authority in regard to the particular matter spoken of in the statute, as taxation, bonded debt, * * * etc."

VI. Since it has just been stated, in effect, that the legislature vested in the Moffat Tunnel Commission the power to levy special assessments, it is convenient to take up next the question whether the act is in violation of section 35, article V, of the Constitution, which prohibits the Legislature from vesting in any special commission the power to tax. The section reads as follows:

"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in

trust or otherwise, or to levy taxes, or perform any municipal function whatever."

In this connection, the question really is: Is the Moffat Tunnel Commission a "special commission" within the meaning of the constitutional provision above quoted? It has been already stated that the commission is the governing body of the district, and it follows, therefore, that it is not more "special" than is any other governing body of a corporation. The commission is to the district what the board of county commissioners is to a county. Neither is a special commission.

In 7 Words & Phrases, 6572, citing *In re Senate Bill,* 12 Colo. 188, 21 Pac. 481, the following definition is given of "Special Commission:"

"The board of public works of a city, the members of which are appointed by the Governor, with the consent of the Senate, charged with duties relating to the expenditures of city funds and the making of public improvements, is not a 'special commission,' within the provision of the Constitution forbidding the delegation to any special commission of any power to make, supervise, or interfere with any muncipal improvement, but is a permanent department of the city government."

The Moffat Tunnel Commission has the management of the improvement district. It is created for that purpose. It is a permanent board, and not one created for a limited object not connected with the management of the district. It is not a special commission within the meaning of section 35, article V, and, therefore, that section is not violated by the Moffat Tunnel law.

VII.    The fact that the Moffat Tunnel Act is a special law gives rise to the contention that it is in violation of section 25, article V, of the Constitution, which provides, among other things, that the General Assembly shall not pass local or special laws in reference to "laying out, opening, altering or working roads or highways." As a foundation for this contention, it is claimed that the contemplated Moffat Tunnel is a highway.

Section 6 of the act provides:

"Said tunnel and its approaches shall be so constructed that the same may be used for standard gauge railroads, for the transmission of power and for the use of telephone and telegraph lines, for the transportation of water and for the transportation of automobiles and other vehicles."

From this it is readily apparent that the tunnel will not be a highway in the ordinary sense of the term, but will be, as indicated in section 1 of the act, "an aveune of communication" which will "reduce the barrier which now separates the western portions of this state from commercial intercourse with the eastern portion thereof."

In *In re Burns,* 155 N. Y. 23, 49 N. E. 246, the court construed a constitutional provision like the one now under consideration, and said:

"The framers of the Constitution evidently used the term (highway) in its ordinary and popular sense, comprehending only the ordinary roads and highways under the care of local authorities."

We give our unqualified approval of that interpretation. The same has been followed in *Grice v. Clearwater Timber Co.,* 20 Idaho, 70, 117 Pac. 112.

Reference is made in one of the briefs to section 4, article XV of the Constitution, which provides that railroads shall be public highways. The nearest the tunnel will come to being a railroad is that one of the uses to which it will be put, not the only use, is that of a right of way for a railroad. Even if it can be said that the tunnel, when completed, will be a road, highway, or railroad, it will not be such a "road or highway" as is contemplated by the constitutional provisions referred to. It will be neither laid out, opened, altered, nor worked. In connection with the words "roads or highways" the constitutional provision uses the words "Laying out, opening, altering or working." A like situation was observed in *Manigault v. Springs,* 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274, where the court said:

"We think that, in connection with the words 'to lay out,

open, alter or work roads,' the word 'highway' is used in its ordinary sense, and as an equivalent to a public road."

It was accordingly held, in that case, that the constitutional provision was not, therefore, applicable to water highways. The same reasoning would make it inapplicable, of course, to such a tunnel as is provided for by the Moffat Tunnel law. Therefore the proposed tunnel is not a road or highway within the meaning of the constitutional provision above cited, and the act does not violate this section.

VIII.   It is claimed by plaintiffs in error that the Moffat Tunnel statute violates sections 1 and 2 of article XI of the state Constitution. Section 1 prohibits the state from lending or pledging its credit, directly or indirectly, to or in aid of any private person or corporation. Section 2 prohibits the state from becoming a joint owner with any private person or corporation.

These sections are set out in full, and their purpose stated, in *Lord v. Denver*, 58 Colo. 1, 143 Pac. 284, L. R. A. 1916B, 306, Ann. Cas. 1916C, 893, where this court considered an amendment to the charter of the City and County of Denver, providing for the creation of a Tunnel Commission and the construction of the Moffat Tunnel. In that case the court was concerned chiefly with a proposed bond issue and a contract made in pursuance of the Moffat Tunnel charter amendment, but the reasoning and the conclusions were applicable, of course, to the amendment as well as to the contract. The court held that "the proposed bond issue" was "clearly both in letter and spirit, within the inhibition of sections 1 and 2 of art. XI, of the constitution," and void.

The charter amendment under consideration in the Lord case, authorized the Tunnel Commission so to contract, with reference to the construction of the Moffat Tunnel, that a portion of the funds needed therefor might be furnished by individuals or corporations interested in the tunnel. Pursuant to such authorization, the Tunnel Commission entered into a contract with the Denver and Salt Lake Railroad Company, a corporation, for the construction of

the tunnel. The contract was, in effect, that the City and County of Denver, for whom the Tunnel Commission was acting, issue and sell its bonds in payment of two-thirds of the expense of the construction of the tunnel, and the railroad company to contribute the remaining one-third of such expense. In the course of the opinion, the court said:

"Indeed, it would seem that language could not make plainer the intent of the framers of the constitution, to utterly prohibit the mingling of public moneys with those of private persons, either directly or indirectly, or in any manner whatsoever."

The situation, above described, existing in the Lord case, is absent here. In the instant case, the statute does not authorize the use of any funds obtained from any private person or corporation under contractual relations. The only funds of such persons or corporations which may be used are funds voluntarily donated. There can be no contract whereby a part of the moneys necessary for the construction of the tunnel are to be furnished by a private person or corporation. The statute does not authorize, neither is the present Tunnel Commission attempting, the construction of the Moffat Tunnel as a joint enterprise carried on between the district and a private person or corporation.

Again, the charter amendment involved in the Lord case authorized the Tunnel Commission to enter into contracts with individuals or corporations whereby the latter might purchase the tunnel on reimbursing the city the amount it expended or invested, and in case of such sale the city would reserve an easement in the tunnel for the purpose of using the same for the conveyance of water and for the transmission of electricity. The contract, made in pursuance to the charter amendment, also provided that the railroad company may purchase the tunnel for railroad transportation purposes, and this was, in effect, providing for an out and out purchase of the tunnel, since there was nothing left for the city outside of the easements above mentioned. Such a situation does not exist in the instant

case.  There is and will be neither a joint ownership of the tunnel by the district and some private person or corporation, nor an ownership now or hereafter by any private person or corporation, but the Moffat Tunnel Improvement District will itself forever remain the sole owner of the tunnel.  The reasons which prompted the court in the Lord case to hold the bond issue and contract there involved void, are not applicable in the instant case.  It seems that the bill for the Moffat Tunnel law was·drafted in the light of the opinion and decision in the Lord case, and so framed as not to be amenable to the constitutional objections which were well founded in that case.

The Moffat Tunnel law provides for the leasing of the tunnel to private persons or corporations, but such a provision does not render the law objectionable as extending aid to such person or corporation as may lease the tunnel, or to any other person or corporation.  In this connection the facts are analogous to those appearing in *Sun Printing & Pub. Ass'n. v. Mayor, etc., of New York,* 8 App. Div. 230, 40 N. Y. Supp. 607, affirmed in 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788.  There, as here, the public improvement was constructed, or would be constructed, entirely at the expense of the city or district, and the ownership of the improvement would forever remain in the municipality or district.  There, as in the instant case, the statute provided for the leasing of the improvement for a limited term.  It was there held, as it must be and is held here, that the leasing of the public work is not such an aid to a private person or corporation as is prohibited by the Constitution ; neither does the leasing result in joint ownership of the improvement by the district and its lessee.  As said in the case last above cited, as reported in 8 App. Div. 230, 249, the relation of lessor and lessee does not create a joint interest.

The case of *Walker v. City of Cincinnati,* 21 Ohio St. 14, 8 Am. Rep. 24, involved the validity of an act authorizing certain cities to provide for the construction of a line of railway over terminals, of which one should be within the

city. With reference to this case and to the leasing of the railroad, the court in *Taylor v. Ross County,* 23 Ohio St. 22, 77, said, among other things:

"The proprietary interest in the road when completed, is as fully in the municipality as that of any other of its public works. It is the road 'owned' by the municipality that is authorized to be leased. The public use for which the road was built, is to be preserved, and the power of leasing the right to use and operate it, is designed only as a mode of making such use available to the public."

In *Haeussler v. City of St. Louis,* 205 Mo. 656, 103 S. W. 1034, the city was authorized to grant to railroad and street car corporations the right to use the bridge, constructed and owned by the city. It was held, citing the Cincinnati case among others, that the ordinance permitting such leasing in no wise violated the constitutional provisions prohibiting the giving of aid to private corporations.

In *Admiral Realty Co. v. City of New York, supra,* it was held that the making of a lease of a subway to a private corporation, where the lease is not in perpetuity, is not loaning money or credit, or giving aid, to such corporation, within the meaning of a constitutional provision like that involved in the instant case.

The cases above cited were referred to, apparently with approval, by this court in the Lord case.

Under the reasoning in the cases cited, the Moffat Tunnel law does not authorize the doing of any act which would be, or could be construed to be, an aid to a private person or corporation, within the meaning of the constitutional provisions cited. Neither the state nor the improvement district does, or can, lend or pledge its faith or credit to any person or corporation. The statute does not permit joint ownership of the tunnel by the district and any private person or corporation. The leasing of the tunnel would result neither in giving aid to a person or corporation nor in a joint ownership. ' For these reasons it must be held that the act does not violate sections 1 and 2, or either of them, of article XI of the state Constitution.

IX. The plaintiffs in error contend also that the Act is in violation of the uniformity clause of the Constitution, relating to taxation. This clause is section 3, article X, reading as follows:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal. * * *"

The only taxation, or form of taxation, provided for by the Moffat Tunnel Act is that described in section 11 thereof, which, so far as material here reads as follows:

"The Board shall have power to levy special assessments upon all real estate within the District, except such real estate as is by this Act exempted, for the purpose provided in this Act, such special assessments to be made in proportion to the benefits to each piece of real estate accruing by reason of the improvements herein provided to be made and in accordance with the rules of apportionment to be adopted by the Board."

The property exempt is such as belongs to the state, cities, towns, etc., and the question now under discussion does not concern these exemptions. Briefly stated, the contention simply is that special assessments, or special assessments on real estate alone, constitute the violation of the uniformity clause.

This question is free from difficulty. The rule is thus aptly stated in 25 R. C. L. 90, section 7.

"It is the well settled general rule that special assessments for local improvements are not taxes within the meaning of the constitutional provision that taxation shall be equal and uniform throughout the state, county, or municipality laying the tax."

The above quoted work cites, among other cases, *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041, 17 L. R. A. 135, and it is not disputed, and cannot be, that the Knowles case is decisive in the instant case upon the proposition

that assessments on property benefited are not within the constitutional inhibition referred to.  However, the plaintiffs in error advance a further proposition and contend, in effect, that special assessments, to be valid under the rule stated in the Knowles case, must be levied on all the property benefited, both real and personal, and that since, as they claim, the proposed improvement involved in the instant case benefits personal property as well as real estate, the Act is invalid because it does not provide for assessments against personal property.  We do not agree with this latter proposition.  It is not clear from the record whether it should be assumed or held now that personal property will also be benefited by the tunnel, but the fact is immaterial.  The Knowles case makes no such distinction as plaintiffs in error make in advancing the contention last mentioned.  The ruling there was that special assessments are not taxes within the constitutional provision.  If they are not taxes, then it is immaterial whether the assessments are confined only to real estate, or are levied on all property.  It has frequently been held that the Legislature *may* include personal property in the assessments.  1 Page & Jones, Taxation by  Assessment, section 548.  If it has been held that personal property *must* be included, we are not in accord with such rule.  It was competent for the legislature to provide that the special assessments be levied on real estate only.  The reason is that it is generally land only that is specially benefited by a local improvement, and even if personal property is also enhanced in value, which is doubtful, to assess real estate alone is still in accord with the theory on which special assessments are upheld, namely, that the improvement, as said in *Pomroy v. Pueblo,* 55 Colo. 476, 136 Pac. 78, "must specially enhance the value of the property against which such assessment is levied at least equal to the amount so assessed."  It has never been held in this state that every kind of property specially benefited must be subjected to the assessment.  It is regarded by the courts as a settled rule that the legislature may order or provide that special assessments be levied either

"upon property generally, or only upon the lands benefited by the inprovement." 25 R. C. L. 108, section 26; *Spencer v. Merchant, supra.*

X.  The assignments of error include the question of due process of law, and it is claimed the court erred in not holding the Moffat Tunnel law void as being in conflict with the due process clause of the federal Constitution.

The objection that the proposed improvement is not for a public purpose is relevant to the question of due process. That objection has been disposed of in an earlier part of this opinion.

While the point is not argued, yet it may be remarked in passing that the due process clause is not violated by the fact that the Legislature created the improvement district without the consent of the land owners of the district. This would be true even if the Legislature had not provided, in section 3 of the act, that the improvement shall not be constructed in the event that there is, within a certain time, a written remonstrance by the owners of property of the value of at least fifty per cent of the value of the property subject to assessment.

In *Denver v. Kennedy, supra,* this court said:

"The constitutional provision relative to 'due process of law' is fully complied with when the property owner is afforded an opportunity to be heard and test the validity of a special assessment and the proportion of the general cost of the improvements which shall be assessed against his property."

This is a well established principle.  See 12 C. J. 1260, section 1061, et seq.

Section 11 of the Moffat Tunnel Act, among other things, provides:

"The Board shall have the power, if it deems it advisable, at any time, after this act goes into effect and before levying special assessments, to appraise the benefits to the several parcels of real estate, within the District which shall result from the organization of said District and the con-

struction of said tunnel, its approaches and equipment, and after such appraisal of benefits shall have the power to levy special assessments to the extent of such benefits upon all real estate as hereinbefore provided. And the Board may adopt rules for such purposes, which rules may provide, inter alia, for notice and hearing to all owners affected thereby."

The record before us shows that the commission determined to appraise the benefits to the several parcels of real estate within the district before levying assessments and commencing the construction of the tunnel. For this purpose the commission heard evidence as to the special benefits which the several parcels of real estate within the district would receive by reason of the organization of the district and the construction of the tunnel. After hearing such evidence the commission made a preliminary finding to the effect that each piece of real estate within the district would be benefited at least to the extent of fifteen per cent of its actual cash value, and also found the actual cash value of each piece of property within the district. After this preliminary finding notice was given to the land owners of a time and place where the commission would hear objections to the appraisal of the benefits. Upon this hearing none of the plaintiffs or intervenors in this proceeding filed any objections. After this opportunity for hearing the commission gave further consideration to the appraisal of the benefits and finding that it had properly appraised such benefits in its preliminary order and resolution, confirmed said appraisals, thus fixing the amount of the benefits upon the real estate and thereby determining the extent to which special assessments could be levied for the purpose of carrying out the objects of the bill.

Objection is made that this appraisal of benefits is unjust, arbitrary and confiscatory. We find that such is not the case. The commission heard evidence upon this subject and, after hearing evidence, arrived at its conclusion. In the court below further evidence was heard upon this same subject and that court found this appraisal of benefits

to be proper.    We confirm this conclusion of the court below.

Section 15 of the act provides that when special assessments are levied the land owner shall again be given an opportunity to be heard before the commission as to the correctness or legality of the assessment, and if he is dissatisfied with this hearing, then an appeal may be taken to the district court.    But by reason of the conclusive determination of the benefits each tract of land will receive by the construction of the tunnel, the only question that can be raised under the procedure provided in section 15 will relate to matters occurring subsequent to such appraisal of benefits heretofore made by the board under the provisions of section 11.

It is also claimed that the members of the commission are, or may be, land owners themselves, and that, on that account, they cannot be an impartial board.

The due process clause of the federal Constitution requires, chiefly, that there be an opportunity to be heard. The Moffat Tunnel law gives this and is not providing for a tribunal not impartial.    The board is created in the ordinary way.    No particular qualifications of the members are prescribed, and need not be.    In further answer to the contention under consideration, the following language from *Hibben v. Smith,* 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195, is applicable:

"We have not the slightest doubt of the power of a legislature, * * * to create a tribunal in a city or town, * * * to make an assessment, and that such assessment would be valid, notwithstanding the fact that every member of the board was a taxpayer of the city or the town. It is a matter of legislative discretion as to how such a board shall be constituted, and we hazard nothing in saying that it is quite common throughout the country for the legislatures of the states to create a tribunal for levying assessments for local improvements in a manner precisely like the case in question.

"To say that no one who was a taxpayer in a city or

town could act in imposing an assessment upon property therein is to say that the legislature is wholly without power, by reason of the Federal Constitution, to constitute a tribunal to make an assessment where such tribunal is composed of taxpayers in the city or town. This we do not believe. It must frequently happen that a board * * * to assess all property for general taxation, will be composed of men who themselves own property in the city and assess the same for purposes of such taxation."

XI. The plaintiffs in error contend that the Act is in violation of article XX of the Constitution, the home rule amendment. A similar contention was made, and over-ruled, in *Miami County v. Dayton,* 92 Ohio St. 215, 235, 110 N. E. 726, where the state legislature established a conservancy district embracing within its area a home rule, city.

Article XX governs local and municipal improvements of the home rule city. The Moffat tunnel is not an improve-ment of the City and County of Denver, but is one of the Moffat Tunnel Improvement District, which is a district embracing territory, and a great deal of territory, outside of Denver. Section 6, of article XX, relates to assessments for local purposes. The assessments involved in the act under consideration do not relate to purposes local to Den-ver but to the district. The contention in question cannot be sustained.

## On Application for Rehearing.

MR. JUSTICE TELLER. Plaintiffs in error now contend that the assessment, the details of which are fully set out in the record, is arbitrary, unlimited and in excess of bene-fits, and constitutes a taking of property without due proc-ess of law.

This we understand is a direct attack upon the acts of the commission in addition to the challenge to the validity of the statute. With this view of the case we have ex-

amined the proceedings of the board, as disclosed by the record, and find that they are not open to those objections.

The assessments are made upon an ad valorem basis, which is one of the recognized methods of making assessments. There is nothing arbitrary or unreasonable in the procedure thus attacked.

It appears that the board determined, first, the aggregate full cash value of the real estate within the district, subject to assessment under this act, and then determined that the several parcels of real estate in the district will be increased in value to the extent fixed by the board. This action was clearly within the authority of the board under its general power to provide by assessment for the cost of the tunnel.

It appears further that the commission provided for the filing of objections to the assessments, and the appraisal of benefits, and fixed a time and place for hearing objections thereto, of all of which notice was given to the property owners in the district, in strict compliance with the rules which the board had adopted. These rules, so far as they provide for notice and hearing upon the appraisal of benefits, are substantially the same as are prescribed by section 15 of the act.

It does not appear that any of the plaintiffs, or interveners, filed objections to the assessments, or to the appraisal of benefits, though some property owners did appear, and their objections were duly heard. The notice given and the time set for filing objections were reasonable and fair. As has already been stated, it is not required in a case of this kind that the benefits should be established to a mathematical certainty; but when a board authorized to make assessments has made them, by one of the methods approved by law, as in this case, and has, by reasonable notice set a time for hearing objections, and has heard the same, it cannot be said that property owners have been deprived of their property without due process of law. Unless the action of the board were arbitrary and clearly unreasonable, the trial court would have had no

right to interfere. As the trial court confirmed the action of the board, upon a full hearing as to the benefits, we see no reason why the matter should be considered further by this court. The method of procedure, as disclosed by the record, is in all respects in accordance with the statute, and no right of the property owners has been violated.

The board having elected, under the last paragraph of section 11 of the act, to appraise once for all the benefits to the several parcels of real estate within the district, it is not necessary that an assessment be made each year, as would have been required by section 15 in case the board had not so elected and acted. Said section, however, remains in force and governs the giving of notice, the granting of hearings, and the rights of objectors, on any question which may hereafter properly arise concerning levies or collections.

Finding no ground for the objection that the proceedings of the board in any respect violate the constitutional provision invoked, and the other grounds for rehearing named being without merit, the rehearing is denied.